Samuel A. Diddle, ISB #4967
sdiddle@eberle.com
EBERLE, BERLIN, KADING,
TURNBOW & MCKLVEEN, CHTD.
1111 West Jefferson, Ste 530
PO Box 1368
Boise, ID  83701
Telephone:     (208) 344-8535
Facsimile:     (208) 344-8542

*Attorneys for the Plaintiff*
*Banner Life Insurance Company*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| BANNER LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>TALESE L. ANDERSON, an individual and JORDAN M. EGGERS, individually and in his capacity as the Personal Representative of the Estate of Jeremy C. Eggers,<br><br>Defendants. | Case No. 1:20-cv-00036-JZ<br><br>**MOTION FOR INTERPLEADER AND DISCHARGE** |

COMES NOW the above-entitled Plaintiff, Banner Life Insurance Company (hereinafter, "Banner"), an insurance company organized under the laws of the State of Maryland, with its principal place of business therein at 3275 Bennett Creek Ave., Frederick, MD 21704, by and through its counsel of record, Eberle, Berlin, Kading, Turnbow & McKlveen, Chartered, and pursuant to Federal Rule of Civil Procedure 22(a)(1), and Idaho Code §§ 5-321 and 8-701, hereby

**MOTION FOR INTERPLEADER - 1**
11097-1\01011327.000

moves this Court for an Order interpleading Defendants and requiring them to litigate this matter bewtween themselves and for an Order discharging Plaintiff from liability to Defenants under a term life insurance Policy No. 181239991 issued to Plaintiff's insured, Jeremy C. Eggers.

Plaintiff further moves this Court, pursuant to Federal Rule of Civil Procedure 67, for an Order allowing Pliaintiff to deposit with the Clerk of the Court the proceeds payable under the aforementioned life insurance policy. This motion is supported by the Interpleader Complaint, attached hereto as Exhibit A.

DATED this 9th day of August, 2021.

EBERLE, BERLIN, KADING, TURNBOW
& MCKLVEEN, CHARTERED

By_____*/s/Samuel A. Diddle*_____
Samuel A. Diddle, Idaho Bar #4967
Attorneys for the Plaintiff
Banner Life Insurance Company

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 9th day of August, 2021, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

John J. Janis
Hepworth Holzer LP
537 West Bannock St.
Boise Idaho 83701

☐ Email: jjanis@hepworthholzer.com
☒ ECF Notice

Shawn E. Logan
Logan & Copple PC
399 S. Oregon Street
Ontario, OR  97914

☐ Email:  shawnlogan@loganlaw.us
☒ ECF Notice

*/s/ Samuel A. Diddle*

Samuel A. Diddle

**MOTION FOR INTERPLEADER - 3**
11097-1\01011327.000

Samuel A. Diddle, ISB #4967
sdiddle@eberle.com
EBERLE, BERLIN, KADING,
TURNBOW & MCKLVEEN, CHTD.
1111 West Jefferson, Ste 530
PO Box 1368
Boise, ID  83701
Telephone:     (208) 344-8535
Facsimile:     (208) 344-8542

*Attorneys for the Plaintiff*
*Banner Life Insurance Company*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| BANNER LIFE INSURANCE COMPANY,<br><br>             Plaintiff,<br><br>v.<br><br>TALESE L. ANDERSON, an individual and JORDAN M. EGGERS, individually and in his capacity as the Personal Representative of the Estate of Jeremy C. Eggers,<br><br>             Defendants. | Civil Action No.<br><br>**INTERPLEADER COMPLAINT** |

Plaintiff, Banner Life Insurance Company (hereinafter, "Banner"), an insurance company organized under the laws of the State of Maryland, with its principal place of business therein at 3275 Bennett Creek Ave., Frederick, MD 21704, by way of Complaint in Interpleader says:

**INTERPLEADER COMPLAINT - 1**
11097-1\00823394.000

# EXHIBIT A

## THE PARTIES

1.      Banner is an insurance company organized and existing under the laws of the State of Maryland with its principal place of business in Frederick, Maryland.

2.      Defendant, Talese L. Anderson, ("Anderson"), is an adult individual who is domiciled in Idaho and resides at 4726 Center Lane, Fruitland, Idaho.  Upon information and belief, Anderson was the girlfriend of Jeremy C. Eggers, deceased (the "Insured") and is named in this action as a putative beneficiary of life insurance proceeds.

3.      Defendant, Jordan M. Eggers  ("Jordan Eggers" or "PR"), is an adult individual who is domiciled in Idaho and resides at 128 Sycamore St., Fruitland, ID.  Upon information and belief, Mr. Eggers is the personal representative of the Estate of the Insured, which is a putative beneficiary of the life insurance proceeds at issue, and is named in this action in his capacity as the personal representative of the Insured's Estate and individually as a putative beneficiary of Accidental Death Policy proceeds.

## JURISDICTION AND VENUE

4.      This Court also has original jurisdiction over this Interpleader action pursuant to 28 U.S.C. § 1335, because the amount in controversy is greater than $75,000.00, and there is diversity of citizenship between two or more of the defendants and plaintiff.

5.      This Court also has original jurisdiction over this Interpleader action pursuant to 28 U.S.C. § 1332, because the death benefits in controversy are greater than $75,000.00, and there is diversity of citizenship among the parties.

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1397 because it is the judicial district in which at least one of the claimants resides.

**INTERPLEADER COMPLAINT - 2**
11097-1\00823394.000

# EXHIBIT A

## FACTS SUPPORTING INTERPLEADER

7.     Banner issued a term life insurance policy to Jeremy C. Eggers, bearing Policy No. 181239991 (the "Life Insurance Policy").  Attached hereto as Exhibit A is a true and correct copy of the applicable booklet/certificate for the Life Insurance Policy.

8.     At all relevant times, the Insured was covered under the Life Insurance Policy for term life insurance benefits in the amount of $1,000,000 ("Death Benefit").

9.     The Insured died on or about May 17, 2019 in Idaho as a result of accidental drowning.  Attached hereto as Exhibit B is a true and correct copy of the Insured's Death Certificate, as provided to Banner.

10.     Under the terms of the Life Insurance Policy, beneficiary designations must be submitted through the Policy Holder.  *See* Exhibit A at pg. 6.

11.     The Designated Beneficiary in effect at the time of the Insured's death was Monica Eggers, the Insured's former spouse.

12.     Upon information and belief, the Insured and Monica Eggers divorced in the State of Idaho and as a result of the divorce, Monica Eggers' rights as the primary beneficiary designated on October 5, 2016, prior to the divorce were terminated pursuant to the applicable Idaho divorce revocation statute.  *See* Idaho's Statue, I.C. § 15-2-804, Revocation of probate and non-probate transfers by divorce.

13.     Following the Insured's death, Banner advised Mark Johnson, the Decedent's insurance agent, that the Insured's beneficiary under the Life Insurance Policy was listed as Monica Eggers, the Decedent's former wife, and Idaho Code § 15-2-804 required that the Death Benefit would be placed in the Estate.

# EXHIBIT A

14.     On or about June 4, 2019, Banner received a competing claim from Anderson's counsel alleging that the Insured had prepared and mailed a Change of Beneficiary Designation naming Ms. Anderson as his sole beneficiary under the Life Insurance Policy prior to his death. Attached hereto as Exhibit C is a true and correct copy of the letter dated June 4, 2019.

15.     Banner advised counsel for Anderson that the Change of Beneficiary form was received on April 5, 2019 but was not processed as it had not been completed prior to submittal and that on April 9, 2019, Banner mailed a letter to the Insured requesting that he complete the form and return it to Banner.  The Insured never returned the completed form.

16.     On November 8, 2019, Banner received a Proof of Loss Claimant's Statement from the Jordan Eggers in his capacity as the personal representative of the Insured's estate.

17.     On or about April 4, 2019 Jeremy Eggers applied for Accidental Death Insurance coverage in the amount of $900,000.00 (the "Accidental Death Policy").   Jeremy Eggers completed an enrollment form (the "Accidental Death Enrollment") naming Jordan Eggers as the beneficiary of the Accidental Death Policy.  Jeremy Eggers passed away before the Accidental Death Policy was issued.  A specimen of the form of the Accidental Death Policy that would have issued is attached hereto as Exhibit D.

18.     The Accidental Death Enrollment form was received and, on information and belief, signed after the Change of Beneficiary Form for the Life Insurance Policy was signed and received by Banner.

19.     Because Jeremy Eggers passed away before the Accidental Death policy was issued, no policy number was assigned to the Accidental Death Policy.  The Accidental Death Policy and the Life Insurance Policy are two distinct policies with distinct conditions for payment of Death Benefits.

**INTERPLEADER COMPLAINT - 4**
11097-1\00823394.000

# EXHIBIT A

20.     Following Jeremy Eggers' death, Banner determined that the Accidental Death Policy was in force.

21.     Jordan M. Eggers and/or the Estate of Jeremy Eggers are asserting a claim to the Accidental Death Policy benefits in the amount of $900,000.00.

22.     Anderson asserted a claim to the benefits payable under the policy numbered 181239991 as well as any separate or additional Accidental death and dismemberment benefit and as such is asserting a competing claim for benefits under the Accidental Death Policy.  See Exhibit E attached hereto.

23.     Due to the competing claims made by or available to Ms. Anderson and Jordan Eggers, in his capacity as personal representative of the Estate of the Insured and individually, Banner has not yet made payment of the Death Benefits under the Life Insurance Policy or the Accidental Death Policy.

24.     If the Court finds that the Life Insurance Policy Death Benefit is payable pursuant to the October 5, 2016 designation and due to the divorce revocation statute, then the Death Benefit under that Policy may be payable to the Estate as required by law.

25.     If the Court finds that Jeremy Eggers is the named beneficiary under the Accidental Death Policy, then the Death Benefit under that Policy may be payable to Jordan Eggers as required by law.

## THE APPROPRIATENESS OF INTERPLEADER

26.     Banner claims no title to or interest in the Death Benefits Life Insurance Policy or the Accidental Death Policy and is ready and willing to pay the Death Benefits to the person or persons entitled to them, but Banner is unable to make that determination without exposing itself to double or multiple liability on account of the potential competing claims of the parties.

**INTERPLEADER COMPLAINT - 5**
11097-1\00823394.000

# EXHIBIT A

27. Banner has no means other than this interpleader action of protecting itself against multiple conflicting or potentially conflicting claims and possible multiple litigation as to the Death Benefits on the part of the parties.

28. Banner is a mere stakeholder in this action, having and claiming no interest in the Death Benefits. Banner is ready and willing to deposit the Death Benefits, together with applicable claim interest, if any, into the Court, or with a person duly authorized by the Court to receive it.

**WHEREFORE**, Banner respectfully requests that the Court issue an Order granting the following relief:

A. Appointing the next friend and/or another appropriate individual as guardian *ad* Directing Banner to pay the Death Benefits, together with claim interest, if any, into this Court;

B. Directing the defendants to interplead their rights to such sum;

C. Restraining the defendants, and each of them, from instituting or maintaining any action against Banner to recover such sums;

D. Discharging Banner from all liability to the defendants arising out of the matters set forth herein upon payment of the Death Benefits, together with applicable claim interest, if any, into this Court;

E. Entry of an Order awarding Banner payment of its reasonable attorney's fees and costs necessitated by the bringing of this action; and

F. Such other relief as is deemed just and proper.

DATED this 24th day of January, 2020.

> EBERLE, BERLIN, KADING, TURNBOW
> & MCKLVEEN, CHARTERED
>
> By_____*/s/Samuel A. Diddle*_____
>    Samuel A. Diddle, Idaho Bar #4967
>    Attorneys for the Plaintiff
>    Banner Life Insurance Company

**INTERPLEADER COMPLAINT - 6**
11097-1\00823394.000

# EXHIBIT A

Case 1:20-cv-00036-DCN Document 47 Filed 08/24/20 Page 10 of 53

EXHIBIT "A"


# EXHIBIT A

# ► RENEWABLE AND CONVERTIBLE TERM LIFE INSURANCE.

Banner Life Insurance Company . 3275 Bennett Creek Avenue . Frederick, Maryland 21704 . 800-638-8428

| | |
|---|---|
| **Insured -** JEREMY CLAY EGGERS | **Face Amount -** $1,000,000 |
| **Policy Number -** 181239991 | **Policy Date -** 10/05/2016 |
| **Owner(s) -** JEREMY CLAY EGGERS | |

Details for Riders, if any, can be found on the Policy Schedule.

**RIGHT TO EXAMINE POLICY FOR 30 DAYS**
**Within 30 days after the Policy is received, it may be returned to the agent through whom it was purchased or to our Home Office. We will then refund any premium paid and the Policy will be deemed void from the beginning.**

**READ YOUR POLICY CAREFULLY**
**This Policy is a legal contract between the Policy Owner and Banner Life Insurance Company.**

In this Policy, Banner Life Insurance Company will be referred to as "we," "our," or "us."

We will pay the face amount to the Beneficiary if the Insured dies while this Policy is in force. Such payment will be subject to the provisions of this Policy.

All payments are subject to the terms of this Policy. The following pages are part of this Policy.

This Policy is issued in consideration of the application and of the payment of the first premium as provided herein. A copy of the application is attached and is made a part of the Policy.

This Policy was approved under the authority of the Interstate Insurance Product Regulation Commission and issued under the Commission standards. Any provision of the Policy that, on the provision's effective date, is in conflict with Interstate Insurance Product Regulation Commission standards for this product type is hereby amended to conform to the Interstate Insurance Product Regulation Commission standards for this product type as of the provision's effective date.

Signed for Banner Life Insurance Company at its Home Office in Frederick, Maryland on the Policy Date.

*Bryan R. Newcombe*

Secretary

*[signature]*

President

## ► Renewable and Convertible Term Life Insurance.

**A change of premium provision is applicable subject to Guaranteed Maximum Premiums**

**The face amount is payable at death while the Policy is in force prior to Expiration Date**

**Premiums are payable as shown in the Policy Schedule to the Expiration Date or until the death of the Insured**

**This Policy is renewable to the Expiration Date**

**This Policy is convertible to the end of the Policy conversion period**

**This Policy is nonparticipating and no dividends are payable**



Legal & General
AMERICA

ICC12OPTN


**EXHIBIT A**

**TABLE OF CONTENTS**

Change of Premium...................................................................................... 7

Conversion................................................................................................... 8

Death Benefit Proceeds............................................................................... 9

Definitions.................................................................................................... 4

Election of Payment Options....................................................................... 10

General Provisions....................................................................................... 4

Owner and Beneficiary................................................................................. 6

Payment of Proceeds................................................................................... 9

Payment Options.......................................................................................... 10

Payment Option Tables................................................................................ 12

Policy Schedule............................................................................................ 3

Premiums...................................................................................................... 6

Renewal........................................................................................................ 7

Termination................................................................................................... 5

**Concluded With:**

**Riders, benefits, amendments, and endorsements, if any; and copy of applications**

**PLEASE READ YOUR POLICY CAREFULLY**

ICC12OPTN

2



# EXHIBIT A

## POLICY SCHEDULE

| | | | |
|---|---|---|---|
| **INSURED:** | JEREMY CLAY EGGERS | **POLICY NUMBER:** | 181239991 |
| **ISSUE AGE AND SEX:** | 40   MALE | **ISSUE DATE:** | 09/14/2016 |
| | | **POLICY DATE:** | 10/05/2016 |
| | | **POLICY EXPIRATION DATE:** | 10/05/2071 |

**OWNER:**  JEREMY CLAY EGGERS

**RATING CLASS:**  PREFERRED PLUS NONTOBACCO

**TERM PERIODS:**  INITIAL TERM PERIOD OF 30 YEARS, FOLLOWED BY ONE YEAR PERIODS

| FORM NUMBER | TYPE OF COVERAGE | EXPIRATION DATE | FACE AMOUNT | INITIAL ANNUAL PREMIUM* | INITIAL TERM PERIOD |
|---|---|---|---|---|---|
| ICC12OPTN | RENEWABLE AND CONVERTIBLE TERM | 10/05/2071 | $1,000,000 | | 30 years |
| ICC10 ADB | ACCELERATED DEATH BENEFIT | | | FREE | |
| | POLICY FEE | | | — | |
| | TOTAL | | $1,000,000 | | |

**END OF POLICY CONVERSION PERIOD:** 10/04/2046

| | |
|---|---|
| **PAYMENT MODE:** | **MONTHLY** |
| **PREMIUM DUE DATE:** | 5th of each month |

**\*PREMIUM MODES AVAILABLE:**    ANNUAL      SEMI-ANNUAL      QUARTERLY      **MONTHLY**

For all years, and subject to rounding, modal premiums are determined by multiplying the annual premium by the following factors:          semi-annual .51      quarterly .26      monthly .0875

FOR MAXIMUM RENEWAL PREMIUMS FOR BASE COVERAGE , SEE PAGE 3A.

Idaho Department of Insurance's number is 800-721-3272.

ICC12OPTN-T30                                              01

**EXHIBIT A**

Case 1:20-cv-00036-DCN Document 1 Filed 01/24/20 Page 11 of 58

POLICY SCHEDULE (CONTINUED)

BASE COVERAGE: 30 YEAR RENEWABLE AND CONVERTIBLE TERM

| YEAR | BASE COVERAGE MAXIMUM ANNUAL RENEWAL PREMIUM* |
|------|---|
| 1 | |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |
| 29 | |
| 30 | |
| 31 | |
| 32 | |
| 33 | |
| 34 | |
| 35 | |
| 36 | |
| 37 | |
| 38 | |
| 39 | |
| 40 | |

ICC12OPTN-T30


EXHIBIT A

POLICY SCHEDULE (CONTINUED)

| YEAR | BASE COVERAGE MAXIMUM ANNUAL RENEWAL PREMIUM* |
|------|-----------------------------------------------|
| 41 | |
| 42 | |
| 43 | |
| 44 | |
| 45 | |
| 46 | |
| 47 | |
| 48 | |
| 49 | |
| 50 | |
| 51 | |
| 52 | |
| 53 | |
| 54 | |
| 55 | |

*PREMIUMS MAY BE CHANGED AFTER YEAR 30 AS PROVIDED IN THE CHANGE OF PREMIUM PROVISION. BASE COVERAGE PREMIUMS INCLUDE POLICY FEE, AND ANY RATING OR FLAT EXTRA, IF APPLICABLE.

For all years and subject to rounding, modal premiums are determined by multiplying the annual premium by the following factors:      semi-annual .51      quarterly .26      monthly .0875



**DEFINITIONS-- All capitalized terms, not otherwise defined herein, shall have the meanings provided below.**

**Beneficiary**
The person to receive the proceeds payable at the Insured's death.

**Contingent Owner**
The Contingent Owner is as named in the application or as subsequently changed by the Owner.

**Expiration Date**
The Expiration Date is the end of the last Term Period. The Expiration Date is shown in the Policy Schedule. After the Expiration Date, no insurance will be provided under this Policy.

**Home and Administrative Office**
Our Home and Administrative Office is located at 3275 Bennett Creek Avenue, Frederick, Maryland 21704.

**Insured**
The Insured is the individual shown in the Policy Schedule.

**Issue Age**
Issue Age is shown in the Policy Schedule and is the Insured's age as of the nearest birthday on the Policy Date.

**Issue Date**
The Issue Date is shown on the Policy Schedule. It is the date we complete the processing of the Insured's approved application, and issue to the Insured or the Owner this life insurance Policy.

**Owner**
The Owner is as named in the application, unless later changed by the Owner. If no Owner is specified, the Insured is the Owner.

**Policy**
Policy shall mean the life insurance policy specified in the Policy Schedule.

**Policy Date**
The Policy Date is shown on the Policy Schedule. This date is used to determine premium due dates, policy anniversaries, years, and months. Coverage will be effective on the Policy Date.

**Renewal Date**
A Renewal Date is the date on which the previous Term Period ended.

**Term Period**
A Term Period is the period of time that premiums are level. The Term Periods are shown in the Policy Schedule.

**Written Notice/Recording Thereof**
Written Notice means a notification or request received from the Owner in a form satisfactory to us. Written Notices are recorded at our Administrative Office. We will not be responsible for the validity of any Written Notice.

**GENERAL PROVISIONS**

**Contract**
The entire contract consists of the following:

- This Policy, including any applicable endorsements;
- Riders, if any;
- Any notice of policy changes sent to the Owner for attachment to this Policy;
- The application, including any supplemental application or amendment to the application; and
- Any application for reinstatement.

ICC12OPTN

4


**EXHIBIT A**

An application includes all sections and forms the Company has designated as parts of the application.

All statements made in an application are, in the absence of fraud, deemed representations and not warranties. No statement will void this Policy or be used in defense of a claim unless it is contained in the application attached to, or considered to have been attached to, this Policy when issued or delivered.

Only the President, a Vice President, or Secretary of the Company can change or waive any provision of this Policy. Any change or waiver must be made in writing.

We may not change or amend this Policy without the Owner's consent except as expressly provided in the Policy. However, we may change or amend this Policy if such change or amendment is necessary for it to comply with any state or federal law, rule, or regulation.

**Incontestability**
Statements may be used to contest the validity of this Policy or in defense of a claim only if they are contained in the application or in an endorsement or amendment, and a copy of that application, endorsement, or amendment is attached to, or considered to be attached to, the Policy at issue or is made part of the Policy when a change becomes effective.

We will not contest this Policy after it has been in force during the Insured's lifetime for two years from the Issue Date, except for failure to pay premiums or fraud in the procurement of the Policy (when permitted by applicable law in the state the Policy is delivered for issuance).

If this Policy is reinstated, except for failure to pay premiums and fraud in the procurement of the reinstated Policy (when permitted by applicable law in the state the Policy is delivered for issuance), it will be incontestable after it has been in force during the Insured's lifetime for two years from the effective date of the Reinstatement. The Incontestability period will be based only on statements in the most recent applications, unless the original contestable period has not yet expired. Any Policy change requiring underwriting will be incontestable after it has been in force during the Insured's lifetime for two years from the effective date of the change. Any Policy change will be contestable only for reasons pertaining to statements that were provided to us for the Policy change.

**Misstatement of Age and Sex**
If the Insured's age or sex has been misstated, we will pay the death benefit that the most recent premium paid would have purchased at the correct age and sex. If the correct age is outside of the issue age ranges, the premium and benefit will be extrapolated.

**Suicide Exclusion**
If the Insured, while sane or insane, dies by suicide within two years from the Issue Date or date of reinstatement, our liability will be limited to a refund of all premiums paid to us.

**Nonparticipating**
This Policy is nonparticipating and the Owner will not share in Banner Life Insurance Company's profits or surplus. No dividends are payable on this Policy.

**TERMINATION**

All coverage under this Policy will terminate at the earliest of:

1. The end of the Grace Period, if as described in the Grace Period provision, the minimum premium due was not received;
2. The date we receive Written Notice at our Administrative Office to terminate the Policy;
3. The date of the Insured's death;
4. The Expiration Date specified in the Policy Schedule; or
5. The date the Owner converts to a new Policy.

ICC12OPTN

5



# EXHIBIT A

**OWNER AND BENEFICIARY**

The Owner, primary Beneficiary, and contingent Beneficiary are as shown in the application or a notice of change that has been received at the Home Office in a form acceptable to the Company. The designation of Contingent Owner is as shown in the application or as subsequently elected by the Owner in a Written Notice received at the Home Office in a form acceptable to the Company. If the Insured becomes the Owner, any designation of Contingent Owner is void.

The Owner has all rights stated in this Policy. The rights of the Owner are subject to the rights of any irrevocable Beneficiary or assignee we have on record.

If the Owner is other than the Insured and the Owner dies during the Insured's lifetime, all rights of the Owner vest in the Contingent Owner, if living or in existence, and the Contingent Owner becomes the Owner. If the Contingent Owner is not alive or in existence at the Owner's death, all ownership rights vest in the Owner's estate or successors. In the event the Owner is other than an individual, and there are no surviving Contingent Owners or successors to the Owner, then the Insured or the Insured's estate becomes the Owner.

**Changes of Owner and Beneficiary**
The Owner, Contingent Owner, primary Beneficiary, and contingent Beneficiary are as shown in the application, unless later changed by the Owner. The Owner may change the designations of Owner, Contingent Owner, and Beneficiary during the Insured's and the Owner's lifetime. Any change of the irrevocable Beneficiary is subject to the written consent of an irrevocable Beneficiary.

Written notice of change of the Owner, Contingent Owner, and Beneficiary must be received at the Home Office in a form acceptable to the Company. Any change will then take effect as of the date the Owner signed the notice unless otherwise specified by the Owner. Such a change shall be subject to and not affect any payment made or other action taken by the Company before Written Notice is received.

**Death of a Beneficiary**
Unless otherwise provided in the Beneficiary designation:

1. The interest of any Beneficiary who dies before the Insured will pass to any surviving Beneficiaries according to their respective interests; or
2. If no Beneficiary survives the Insured, the proceeds will be paid to any surviving contingent Beneficiary according to their respective interest. If no Beneficiary or contingent Beneficiary survives the Insured, the proceeds will be paid in one sum to the Owner, if living; otherwise, to the Owner's estate.

If a trust is named as the Owner or Beneficiary of this Policy, the Company will have no obligation to verify that the trust is valid or that a trustee is acting within the scope of that trustee's authority. Any payment to the trust will release the Company from all obligations under this Policy and the Company will have no obligation to ensure that such payment is applied according to the trust agreement.

**Assignment of Policy**
This Policy may be assigned. We will not be responsible for the validity of an assignment. Written Notice of an assignment must be received by our Home Office in a form acceptable to the Company The assignment will then take effect as of the date the Owner signed the notice unless otherwise specified by the Owner. Such a change shall not affect any payment made or other action taken by the Company before Written Notice is received. Payments to any assignee will only be made in a lump sum.

**PREMIUMS**

**Payment of Premiums**
The first premium must be paid during the Insured's lifetime before any insurance becomes effective. The due date of the first premium is the Policy Date. Each subsequent premium is due on the premium due date(s) shown in the Policy Schedule, and must be paid during the Insured's lifetime. The Owner may change the frequency of the premium payment to any frequency we offer on the date such change is requested. All premiums, after the first, are payable in advance at our Administrative Office. A premium receipt signed by one of our officers will be furnished upon request. In no event may premiums be paid beyond the Expiration Date.

ICC12OPTN

6


**EXHIBIT "A"**

**Grace Period**
Except for the first premium, we will allow a 31 day grace period after the premium due date to pay each premium. During the Grace Period, the Policy will remain in force. We will send notification of the Grace Period and the minimum premium due to the Owner's last known address and to any assignee of record at least 30 days prior to the date the Policy is to terminate.

If sufficient premium is not paid, all coverage under this Policy will terminate without value at the end of the Grace Period. Sufficient premium payment sent by U.S. mail must be postmarked within the Grace Period. If death of the Insured occurs during the Grace Period, we will subtract the premium amount required to provide insurance coverage to the end of the Policy month in which the date of death of the Insured occurred from the Death Benefit Proceeds.

**Reinstatement**
A Policy which terminates in accordance with the Grace Period provision may be reinstated if:

1. Written request for Reinstatement is made within five years after the expiration of the Grace Period and before the Expiration Date of the Policy. The reinstated Policy will be in force from the latter of the date we approve the application for Reinstatement and the date required premiums are paid;
2. The Owner submits a written application;
3. Evidence of the Insured's insurability is received and approved by us; and
4. All due and unpaid premiums, including back payments, with interest payable at an annual rate of [6%] are paid.

**CHANGE OF PREMIUM**

We may, at our sole discretion, change the premium for this Policy after the initial Term Period, exclusive of any riders, subject to the following:

1. The annual renewal premium for this Policy will not exceed the maximum annual renewal premium shown in the Policy Schedule;
2. The premium may not be changed more than once during any 12 month period;
3. We will send the Owner, at the address in our records, a Written Notice of any change in premium at least 30 days before the date on which the change will be effective;
4. Any change of premium will be based on our expectations as to future experience for such elements as persistency, expenses, mortality, taxes, and investment earnings;
5. The modal premium will be calculated on the same basis as used on the Issue Date of this Policy;
6. Any change in premium will be on a uniform basis applying to all policies with the same issue age, sex, rating classification, duration, and plan of insurance as this Policy. A change of health will not cause a change of premium; and
7. Any change in premium will take effect on the Policy anniversary date following the date we make the change.

**RENEWAL**

**Renewability**
This Policy may be renewable for additional Term Periods. Evidence of the Insured's insurability need not be furnished. Renewal will occur only if premiums have been paid to the Renewal Date. This Policy, however, will not continue beyond the Expiration Date.

**Effective Date of Renewal**
The renewal premium must be paid within 31 days of the Renewal Date in order for the renewal to become effective. If the Insured dies during this period, the Policy will be renewed automatically and the portion of the renewal premium required to provide insurance from the premium due date to the end of the Policy month in which the Insured's death occurs will be deducted in the calculation of proceeds payable.

**Renewal Premiums**
The maximum annual renewal premium rates for this Policy, including riders and benefits, are shown in the Policy Schedule.

ICC12OPTN

7



# EXHIBIT A

Case 1:20-cv-00036-JCN Document 1 Filed 02/24/20 Page 20 of 58

**Automatic Renewal**

This Policy will be automatically renewed on the Renewal Date if:

1. This Policy contains a total disability benefit; and
2. Premiums are being waived to the Renewal Date under such disability benefit.

We will waive renewal premiums as long as the Insured continues to be totally disabled under such total disability benefit.

## CONVERSION

This Policy may be converted to a new policy on the Insured's life. Evidence of the Insured's insurability is not required. Any conversion will be subject to the following:

1. Occurring on any premium due date, but not later than the end of the Policy conversion period shown in the Policy Schedule;
2. Receipt of the Owner's written request and application for conversion;
3. Payment of the first premium for the new policy;
4. The Owner returning this Policy to us; and
5. Except for as provided in the Automatic Conversion provision, no conversion shall occur while the Insured is totally disabled under the terms of a total disability benefit.

The new policy will be issued:

1. With the date of conversion as its Policy Date;
2. At the Insured's age on the date of conversion;
3. With the same rating classification as that under this Policy;
4. On any permanent life plan which we, at our sole discretion, make available for conversion and, for the amount converted, we customarily issue on the date of conversion to applicants with the Insured's rating classification;
5. With premiums based on our rates for the rating classification and plan of insurance on the date of conversion;
6. For an amount of insurance not less than our minimum for the plan provided nor greater than the face amount of this Policy on the conversion date. At least one plan of insurance will be available for conversion in an amount equal to the face amount of this Policy on the conversion date;
7. So that the time limit specified in the Incontestability and Suicide provisions of the new policy will be measured from the Issue Date of this Policy; and
8. Subject to any assignment of this Policy received at our office.

The new policy will contain a total disability benefit if:

1. This Policy contains such benefit in force on the date of conversion;
2. On the date of conversion, we customarily issue such benefit to applicants with the Insured's age, sex, and rating classification; and
3. On the date of conversion, we customarily issue such benefit in conjunction with the plan to which the Insured converts.

If more than one type of total disability benefit is available on the date of conversion, the benefit attached to the new policy will be the benefit with the lowest premium.

**Automatic Conversion**

This Policy will be converted to a permanent life plan selected by us at the end of the Policy conversion period if:

1. This Policy contains a total disability benefit;
2. The Insured is totally disabled under the terms of the disability benefit at the end of the Policy conversion period; and
3. Such disability continued during the six months prior to the end of the Policy conversion period.

ICC12OPTN

8


EXHIBIT A

The new policy's premiums will be based on the Insured's age on the date this Policy is converted. The new policy will be issued for an amount equal to the face amount on this Policy on the conversion date. Any premium falling due while the Insured continues to be totally disabled will be waived.

## DEATH BENEFIT PROCEEDS

The life insurance proceeds payable at the Insured's death will be (1) plus (2) plus (3) minus (4) where:

(1) Is the face amount of this Policy, shown in the Policy Schedule;
(2) Is any insurance on the Insured's life provided by riders;
(3) Is the portion of any premium paid for a period beyond the Policy month in which the Insured's death occurs; and
(4) Is any premium which is due and unpaid for a period from the premium due date to the end of the Policy month in which the Insured's death occurs.

The payment of interest on the death benefit shall be as follows:

1. Interest shall accrue and be payable from the date of death.
2. Interest will accrue at the rate or rates applicable to the Policy for funds left on deposit. In determining these effective annual rate or rates, the Company shall use the rate in effect on the date due proof is received by the Company.
3. Interest will accrue at the effective annual rate determined in item 2 above, plus additional interest at a rate of 10% annually beginning with the date that is 31 calendar days from the latest of Items (a), (b), and (c) to the date the claim is paid, where it is:
   a. The date that due proof of death is received by the Company;
   b. The date the Company receives sufficient information to determine its liability, and the appropriate payee legally entitled to the proceeds; and
   c. The date that legal impediments to payment of proceeds that depend on the action of parties other than the Company are resolved and sufficient evidence of the same is provided to the Company. Legal impediments to payment include, but are not limited to: (i) the establishment of guardianships and conservatorships; (ii) the appointment and qualification of trustees, executors, and administrators; and (iii) the submission of information required to satisfy any state and federal reporting requirements.

We will not pay the death proceeds until we receive all of the following at our Administrative Office:

1. This Policy or a completed and notarized lost policy affidavit;
2. Due proof of death, satisfactory to the Company, that the Insured died while the Policy was in effect;
3. A written claim for the death proceeds completed on a form that we supply; and
4. If this Policy or a policy change or reinstatement is contestable as set forth in the Incontestability provision when the Insured died, an authorization, on a form that we supply, from a person authorized to allow us to obtain and disclose information about the Insured.

We reserve the right to require the return of the Policy at time of settlement.

## PAYMENT OF PROCEEDS

Any amount payable under this contract will be paid in one sum unless otherwise provided. All or part of this sum may be applied to any Payment Option. However, options will not be available if:

1. The net proceeds are less than $2,500;
2. The amount of each payment is less than $50; or
3. In the case of Payment Option 1, 3, or 4, the payee is not a natural person receiving payment in his or her own right.

Proceeds left with us may be withdrawn by Written Notice where such right is given. We reserve the right to postpone payment of any withdrawal for as long as six months from the date we receive Written Notice.

We may require evidence of the survival of any payee before any settlement payment payable to the payee is made.

ICC12OPTN                                        9

# EXHIBIT A

**ELECTION OF PAYMENT OPTIONS**

**By Owner**
During the Insured's lifetime, the Owner may elect any Payment Option and may change such election if he or she has reserved the right to do so.

If the Owner elects a Payment Option for the Beneficiary, the Beneficiary may not:

1.  Change or cancel the election;
2.  Assign or transfer the amount held by us; or
3.  Withdraw any future installments or unpaid interest installments unless these rights are granted in the election.

**By Beneficiary**
If the Owner does not elect a payment option, the Beneficiary may do so after the Insured's death.

Such election by the Beneficiary:

1.  Must be made before the payment of any Policy proceeds has been made; and
2.  Shall be effective as of the date of the Insured's death.

**Conditions of Election**
Any election or change must be made by Written Notice to us. No election or change will be effective until we record it.

**PAYMENT OPTIONS**

The annuity benefits at the time of their commencement will not be less than those that would be provided by the application of the cash surrender value to purchase a single consideration immediate annuity contract at purchase rates offered by the Company at the time to the same class of annuitants whether the annuity benefits are payable in fixed or variable amounts, or both.

The following sections describe the payments options available under this Policy.

**Option 1 – At Interest**
The proceeds may be left with us to draw interest. Interest may be paid annually, semi-annually, quarterly, or monthly. The first payment will be made at the end of the interest frequency period chosen. The guaranteed interest rate is 1.5%, compounded yearly. Interest shall not be paid beyond the lifetime of one payee except with our consent.

**Option 2 – Payments of a Fixed Amount**
Under this option, the Company will make monthly payments in the amount chosen until the proceeds and earned interest have been paid in full. The total amount paid each year must be at least 5% of the original proceeds. The length of the payment period will depend on the amount chosen the amount of the proceeds applied, and the amount of interest earned.

**Option 3 – Payments for a Fixed Period**
We will make payments for a fixed period. The amount of each payment, per $1,000 of Policy proceeds, will not be less than that shown in Table A. At the payee's death, we will continue to pay the balance of the unpaid payments to the payee's Beneficiary.

**Option 4 – Life Income**
We will make equal monthly payments during the payee's lifetime, with a minimum period guaranteed (60 or 120 months). Payments will end with the last monthly payment before payee's death. The amount of each payment, per $1,000 of Policy proceeds, will not be less than that shown in Table B.

ICC12OPTN

10



**Evidence of Survival**
We have the right to require satisfactory proof of any payee's age. The right to change options is not available after payments commence under this option.

**Basis of Values**
The Payment Option tables are based on an interest rate of 1.5% compounded yearly. For options involving lifetime income, mortality rates are based on the 2000A Mortality Table. We may offer more favorable rates than those determined on this basis.

**Additional Options**
Any proceeds payable under this Policy may be paid under any other method of payment agreed to by us at the time of settlement.

ICC12OPTN

11

# EXHIBIT A

**PAYMENT OPTION TABLES**

**Table A − Monthly Payments for Each $1,000 of Proceeds**

| Number of Years | Monthly Payments |
|---|---|
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |
| 29 | |
| 30 | |

ICC12OPTN

12

**EXHIBIT A**

## Table B, Monthly Payments for Each $1,000 of Proceeds

| | LIFE ONLY | | LIFE WITH PERIOD CERTAIN | | | |
| | | | 5 Years | | 10 Years | |
| Age | Male | Female | Male | Female | Male | Female |
|---|---|---|---|---|---|---|
| 50 | 3.24 | 3.00 | 3.24 | 3.00 | 3.22 | 2.99 |
| 51 | 3.32 | 3.06 | 3.31 | 3.06 | 3.29 | 3.05 |
| 52 | 3.39 | 3.13 | 3.38 | 3.12 | 3.36 | 3.11 |
| 53 | 3.47 | 3.19 | 3.46 | 3.19 | 3.44 | 3.18 |
| 54 | 3.55 | 3.26 | 3.54 | 3.26 | 3.51 | 3.25 |
| 55 | 3.63 | 3.34 | 3.63 | 3.33 | 3.60 | 3.32 |
| 56 | 3.73 | 3.42 | 3.72 | 3.41 | 3.68 | 3.39 |
| 57 | 3.82 | 3.50 | 3.81 | 3.49 | 3.77 | 3.47 |
| 58 | 3.92 | 3.59 | 3.91 | 3.58 | 3.87 | 3.56 |
| 59 | 4.03 | 3.68 | 4.02 | 3.67 | 3.97 | 3.64 |
| 60 | 4.15 | 3.78 | 4.13 | 3.77 | 4.07 | 3.74 |
| 61 | 4.27 | 3.88 | 4.25 | 3.87 | 4.19 | 3.83 |
| 62 | 4.40 | 3.99 | 4.38 | 3.98 | 4.30 | 3.94 |
| 63 | 4.54 | 4.11 | 4.52 | 4.09 | 4.43 | 4.05 |
| 64 | 4.69 | 4.23 | 4.66 | 4.22 | 4.55 | 4.16 |
| 65 | 4.85 | 4.37 | 4.81 | 4.35 | 4.69 | 4.28 |
| 66 | 5.02 | 4.51 | 4.98 | 4.49 | 4.83 | 4.41 |
| 67 | 5.20 | 4.66 | 5.15 | 4.64 | 4.98 | 4.55 |
| 68 | 5.39 | 4.83 | 5.33 | 4.80 | 5.13 | 4.69 |
| 69 | 5.60 | 5.00 | 5.53 | 4.97 | 5.29 | 4.84 |
| 70 | 5.82 | 5.19 | 5.73 | 5.15 | 5.45 | 5.00 |
| 71 | 6.05 | 5.40 | 5.95 | 5.34 | 5.62 | 5.17 |
| 72 | 6.30 | 5.62 | 6.18 | 5.55 | 5.79 | 5.34 |
| 73 | 6.57 | 5.85 | 6.42 | 5.78 | 5.96 | 5.52 |
| 74 | 6.85 | 6.11 | 6.67 | 6.02 | 6.14 | 5.71 |
| 75 | 7.15 | 6.39 | 6.94 | 6.28 | 6.32 | 5.91 |
| 76 | 7.48 | 6.69 | 7.22 | 6.55 | 6.51 | 6.11 |
| 77 | 7.82 | 7.01 | 7.52 | 6.84 | 6.69 | 6.31 |
| 78 | 8.19 | 7.37 | 7.83 | 7.16 | 6.87 | 6.52 |
| 79 | 8.59 | 7.75 | 8.15 | 7.49 | 7.05 | 6.73 |
| 80 | 9.02 | 8.16 | 8.49 | 7.84 | 7.22 | 6.93 |
| 81 | 9.47 | 8.61 | 8.85 | 8.21 | 7.39 | 7.14 |
| 82 | 9.95 | 9.09 | 9.21 | 8.60 | 7.56 | 7.33 |
| 83 | 10.47 | 9.62 | 9.59 | 9.01 | 7.71 | 7.52 |
| 84 | 11.02 | 10.18 | 9.97 | 9.44 | 7.86 | 7.69 |
| 85 | 11.61 | 10.80 | 10.37 | 9.87 | 8.00 | 7.86 |
| 86 | 12.24 | 11.46 | 10.76 | 10.32 | 8.13 | 8.01 |
| 87 | 12.91 | 12.16 | 11.17 | 10.77 | 8.24 | 8.15 |
| 88 | 13.62 | 12.92 | 11.57 | 11.22 | 8.35 | 8.27 |
| 89 | 14.37 | 13.72 | 11.97 | 11.66 | 8.45 | 8.38 |
| 90 | 15.17 | 14.56 | 12.37 | 12.10 | 8.54 | 8.48 |
| 91 | 16.02 | 15.43 | 12.77 | 12.52 | 8.61 | 8.56 |
| 92 | 16.92 | 16.35 | 13.16 | 12.92 | 8.68 | 8.64 |
| 93 | 17.87 | 17.30 | 13.54 | 13.31 | 8.74 | 8.71 |
| 94 | 18.88 | 18.30 | 13.91 | 13.69 | 8.80 | 8.76 |
| 95 | 19.97 | 19.33 | 14.28 | 14.05 | 8.84 | 8.81 |

Income Payments for ages not shown furnished upon request. The values above are based on 1.5% and the 2000A Mortality Table. Age above is based on age nearest birthday.

ICC12OPTN



13



**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
800-638-8428

**Amendment**

This Amendment is attached to and becomes part of the policy.

The Payment of Proceeds provision of the policy is amended to include the following:

"If we defer payment of a cash surrender value under the provision of this section, we shall pay interest to you at the rate specified in section 28-22-104 (2), Idaho Code as established and in existence at the time of the surrender demand."

This Amendment is effective on the policy date of the policy to which it is attached.

President

LU-1023

**EXHIBIT A**



**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
800-638-8428

## SUPPLEMENT TO THE APPLICATION

Policy Number: 181239991

## HEALTH STATEMENT

This statement is required because the above-numbered policy has not been delivered to the applicant or proposed insured within the company-prescribed limits.

Part A is to be completed if there has been no change in health of any of the proposed insured(s) and/or Part B is to be completed if there has been a change in health of any of the proposed insured.

A. ☐  No Change in Health for _____
(First and last names of each proposed insured)

I declare that since the date of the last medical examination or non-medical application for insurance with Banner Life Insurance Company:

1. the health, mental and physical condition of any person(s) named above to be covered under the policy has not changed; and

2. that any person(s) named above proposed for insurance under this application has not had any illness or injury, consulted or been examined by a physician, had life, accident or health insurance postponed, rated up, ridered, declined, cancelled or renewal of reinstatement refused.

B. ☐  Change in Health for_____
(First and last names of each proposed insured)

Please provide details below:

| Name of Proposed Insured | Date of Visit | Reason for Medical Consultation/Treatment | Name and Address of Doctor |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

I represent that, to the best of my knowledge and belief, these statements are complete and true and agree that this statement and the answers given herewith will be made part of the new contract, if issued. The completion of any transaction for which this statement is made is conditioned upon the payment of any amount due to Banner Life Insurance Company on account thereof and the approval of this statement by the company at its Home Office. If such approval is refused, any such payment will be returned.

Authorization is hereby given any licensed physician, medical practitioner, hospital, clinic or other medical or medically related facility, insurance company, the Medical Information Bureau or other organization, institution or person that has any records or knowledge of any proposed insured or their health to give to Banner Life Insurance Company any such information. A photographic copy of this authorization shall be as valid as the original.

_____     _____
Proposed Insured                                         Date

_____     _____
Applicant (if other than Proposed Insured)       Date

LU-1013(9/89)

**EXHIBIT A**

BANNER LIFE INSURANCE COMPANY

Frederick, Maryland

AMENDMENT TO APPLICATION

PROPOSED INSURED - JEREMY CLAY EGGERS

FILE NUMBER -     181239991                    DATE OF APPLICATION -     07/12/2016

THE BANNER LIFE INSURANCE COMPANY IS HEREBY AUTHORIZED TO
AMEND THE APPLICATION IDENTIFIED ABOVE IN THE FOLLOWING MANNER:

Part 2 Question #4 shall read: 2009 Vasectomy. Full recovery.
Part 2 Question #5 shall read: 1/30/14 Routine CDL physical, not prompted
by any symptoms or abnormal findings, and all results were found to be
within normal limits.
Part 1 Question #27 shall read: No.

IT IS AGREED THAT THIS AMENDMENT SHALL FORM A PART OF MY APPLICATION AND
THAT A COPY HEREOF IS TO BE ATTACHED TO THE POLICY.

_____                    _____
Proposed Insured's Signature                                        Date

_____                    _____
Signature of Policy Owner                              Title, if owner is Business or Trust

LU-14(54-62)

BANNER LIFE INSURANCE COMPANY



EXHIBIT A



**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
800-638-8428
www.LGAmerica.com

**ACCELERATED DEATH BENEFIT**

**This rider provides for an accelerated death benefit payment to the Owner of the policy during the lifetime of the Insured subject to eligibility requirements. An accelerated death benefit payment, hereafter referred to as an ADB, will reduce the policy's death benefit proceeds otherwise payable and limit the availability of any policy cash surrender value and/or any available loan value. This rider is not intended or designed to provide health, nursing home, or long-term care. There are no restrictions on the use of an ADB.**

**The policy owner should seek assistance from a tax advisor regarding the tax status of any ADB payment.**
........................................................................

In this Benefit Rider, Banner Life Insurance Company will be referred to as "we"," our" or "us" or "company". The "policy" is the policy to which this rider is attached. Coverage pursuant to this rider begins on the same date as the coverage for the policy. This rider is subject to all terms and conditions of the policy, except as provided in this rider. The rider is made part of the policy on the policy issue date. For purposes of this rider, the insured is as defined in the policy.

**BENEFIT**
We will make an accelerated death payment subject to the provisions of this rider. An ADB payment will require:
1. The Owner's written request, sent to our home office, for an ADB payment.
2. Proof that is acceptable to us that the Owner is eligible for receipt of an ADB payment.
3. A signed acknowledgement of concurrence for payment from all irrevocable beneficiaries and any assignee on the policy. If the company paying the ADB is itself the assignee under the policy, no signed acknowledgement is required.
4. A full release of any collateral assignment of the policy with the exception of collateral assignment to the company.
5. That, if the policy is a term insurance, it cannot have less than twelve months remaining until the maturity date on the date that payment is to be made.
6. That the policy has not been voided and is not being contested.

The ADB will be paid to the Owner or Owner's estate while the insured is living, unless the benefit has been otherwise assigned or designated by the Owner. The payment of the accelerated death benefit is due immediately upon receipt of the due written proof sufficient by the company to confirm eligibility for the ADB.

We will not make an ADB if the policy is being continued as extended term insurance or reduced paid-up insurance on the date payment is to be made.

**BENEFIT LIMITS**
The maximum accelerated death benefit is the lesser of:
1. 75% of the policy's primary death benefit as determined on the date that the company approves payment of the ADB; and
2. $500,000.
This amount is further reduced by any outstanding policy loan, with accrued interest, on the date of payment of the ADB.

**ADB ELIGIBILITY REQUIREMENTS**
To be eligible for an ADB payment the Owner must provide to us:
1. evidence acceptable to us that the Insured is living and has a medical condition that is reasonably expected to result in a life expectancy of twelve months or less; this evidence must include, but is not limited to, certification by a physician that we approve who is licensed to practice medicine in the United States or Canada and is acting within the scope of that license.

ICC10 ADB                                                      1



EXHIBIT A

2. evidence that election of this benefit is voluntary and without coercion on the part of any third party, including any creditor or government agency.
3. evidence that only one of the Insureds is living, if the policy is a last survivor policy.

Additionally, the company has the right to require a second or third medical opinion to confirm benefit eligibility. Such second and third opinions are at the company's expense. The second medical opinion may include a physical examination by a physician designated by the company. In the case of conflicting opinions, eligibility for benefits shall be determined by a third medical opinion that is provided by a physician that is mutually acceptable to the Owner and the Company.

## EFFECT OF THE ACCELERATED DEATH BENEFIT

The ADB will be treated as a lien against the policy's death benefit. Such lien will limit the availability of any surrender benefit and any future policy loans, policy withdrawals or policy surrenders.

Prior to, and concurrent with, the election to receive an ADB, the owner and irrevocable beneficiary will be given a statement demonstrating the effect of an ADB on the policy's cash surrender values, death benefit, and policy loans.

The lien amount will at any time equal:
1. the amount of the ADB payment to the owner; plus
2. the administrative fee; plus
3. the amount of any premium required to remove the policy from the grace period; plus
4. any unpaid required premiums added to the lien as described below; plus
5. accrued lien interest charges as described below.

For the amount of the lien equal to the policy's cash surrender value at the time the lien is in effect, interest will be charged at the policy loan interest rate stated in the policy. For the amount of the lien in excess of such cash surrender value, interest will be charged at a rate that is no greater than the greater of:
1. the current yield on a 90-day treasury bill on the date of the ADB payment; and
2. the current maximum adjustable policy loan interest rate allowed by law on the date of payment subject to the Interstate Insurance Product Regulation Commission standards.

After the company makes an ADB payment, the Owner will be liable for premium payments required to keep the policy, and applicable riders, in force through the date of death of the Insured. Any such premium payments, if not paid to the company, will be added to the lien. Cost of insurance charges, if applicable, will continue to be charged against the policy (unless being waived because of a waiver of monthly deduction benefit that is in effect). Waiver of premium benefits, if in effect following payment of an ADB, will continue to apply.

Subsequent to payment of an ADB, upon the death of the insured the proceeds payable will equal the death benefit proceeds, as defined in the policy, less the total lien in effect at the date death.

If the policy has an accidental death benefit provision, that provision shall not be affected by the payment of the accelerated death benefit.

## ADDITIONAL PROVISIONS

There is no premium or cost of insurance charge for this rider. However, an administrative fee that will not exceed $250 will apply at the time the ADB is paid and it will be added to the lien.



# EXHIBIT A

The policy's primary death benefit is the death benefit provided by the policy. It does not include any accidental death benefits, the death benefit provided by any riders, or death benefits payable due to the death of anyone other than the Insured. If the policy does not provide for policy loans, the loan value is defined as zero. If the policy does not provide cash surrender values, the cash surrender value is defined as zero.

**INCONTESTABILITY**
The policy's incontestability provision will apply to this rider.

**PAYMENT OPTIONS**
The ADB will be payable to the Owner as a lump sum payment.

If the policy has a cash surrender value, the available ADB will be at least 75% of any such cash surrender value, where such cash surrender value reflects the deduction of any outstanding policy indebtedness.

If the insured dies after the owner elects to receive an ADB, but before the Owner receives such benefits, the election is cancelled and the death benefit is paid pursuant to the policy.

**REINSTATEMENT**
The policy's reinstatement provision will apply to this rider.

**TERMINATION**
This rider will terminate on the earliest of:
1. the date of maturity or termination of the policy;
2. when a nonforfeiture option has become effective under the policy; or
3. at the date the Owner's written request for termination is signed; this request must be received in our home office.

If at any time the total lien amount equals or exceeds the policy's death benefit proceeds as defined in the policy, the policy will terminate. Termination will occur 31 days after the company has mailed a notice of termination to the last known address of the Owner, unless all or part of the lien amount is repaid with 31 days after the noticed is mailed. We will accept a partial repayment only if the death benefit proceeds of the policy would exceed the lien amount after the partial repayment is applied.

Termination shall not prejudice the payment of benefits if the insured became eligible for an ADB while the policy was in force.

This rider is subject to the conditions of this policy. Where a conflict between the rider and the policy exists, the conditions of the rider will control.

The issue date of this benefit is the policy date, or a later date if shown here.

Signed for us at our home office in Frederick, Maryland.

Secretary

President

ICC10 ADB

3

**EXHIBIT A**



Banner Life Insurance Company
3275 Bennett Creek Avenue
Frederick, Maryland 21704
(800) 638 8172

Page 1 - ICC08-LIA (10/08)

**PART 1**
(Please Print)

## SECTION A    PROPOSED INSURED

| 1. Full Name (Include maiden name in parentheses) | 2. Sex | 3. Date of Birth Month / Day / Year | 4. Social Security Number |
|---|---|---|---|

Jeremy Clay Eggers   ☒ M   ☐ F

| 5. a. Home Address | | 5. b. How Long |
|---|---|---|

Street 128 Sycamore St.    City, State Fruitland, ID   Zip 83619   5 years

| 6. Phone Numbers | 7. State/Country of Birth | 8. U.S. Citizen ☒ Yes  ☐ No  Visa Type _____ |
|---|---|---|

Home
Work [    ]    ID / USA
If No, Date of Entry into U.S. _____
Country of Citizenship _____

| 9. Marital Status | |
|---|---|

☒ M   ☐ S   ☐ W   ☐ D    10. Driver's License Number and State of Issue or State ID Number

11. Occupation (Include duties)    12. Annual Income $75,000    13. Total Net Worth

Technician (install, trouble shoot phone systems)

14. a. Employer's Name and Address and Nature of Business    14. b. How Long Employed

15. Have you ever used tobacco or nicotine products in any form?   ☐ Yes - give details below   ☒ No

| Product | Date last used (month/year) | Amount / Frequency |
|---|---|---|
| Cigarettes | | |
| Cigars | | |
| Other | | |

## SECTION B    BENEFICIARY   (Share percentage totals must equal 100%. If necessary, use Remarks section, Question 48. If Beneficiary is a trust, check box ☐ and complete Section D.)

16. Primary

Name Marion M. Eggers    Relationship Spouse    % Share 100
SSN _____    Date of Birth _____
Name _____    Relationship _____    % Share _____
SSN _____    Date of Birth _____

17. Contingent

Name _____    Relationship _____    % Share _____
SSN _____    Date of Birth _____
Name _____    Relationship _____    % Share _____
SSN _____    Date of Birth _____

## SECTION C    OWNER

18. Owner is   ☒ Proposed Insured   ☐ Trust (also complete Section D)   ☐ Other than Proposed Insured or Trust
Complete if the Proposed Insured is not the Owner. (If contingent Owner is required, use Remarks section, Question 48.)

Name Jeremy C. Eggers    SSN or Tax ID # _____    Date of Birth _____
Address 128 Sycamore St.    City, State Fruitland, ID   Zip 83619
Contact Phone # _____    Relationship to Proposed Insured Self
If Owner is a business, enter firm address.    Email address _____

## SECTION D    TRUST INFORMATION   (If trust is Beneficiary and/or Owner)

19. Exact Name of Trust _____    Trust Tax ID # _____
Current Trustee(s): _____    Date of Trust _____

ICC08-LIA (10/08)    Page 1

# EXHIBIT A

**PART 1** (continued)

---

**SECTION E    PAYOR**

20. Send premium notices to: ☒ Insured   ☐ Owner   ☐ Other - if Other, complete the information below

Name _____    Relationship to Insured/Owners _____

Address _____
 Street _____    City _____    State ____    Zip ____

Contact Phone # _____    Email address _____

---

**SECTION F    INSURANCE APPLIED FOR**

21. Amount of Insurance  $ 1,000,000.⁰⁰    22. Plan of Insurance  OP Term  30 yr.

23. Death Benefit Option (if available with Plan):   ☒ Level Death Benefit   ☐ Increasing Death Benefit

24. Payment method:   ☐ Direct Bill  ☒ Electronic Funds Transfer (EFT)

25. Frequency of premium payment:   ☐ Single   ☐ Annual   ☐ Semi-annual   ☐ Quarterly   ☒ Monthly (EFT only)

26. Planned periodic premium for universal life product:  (Provide details in Remarks section, Question 48.)

 a. ☐ 1st Year Only $_____    2nd Year and Thereafter $_____    b. ☐ Premium For All Years $_____

27. Will the premiums for this policy be loaned or otherwise financed by an individual(s) or entity other than the Proposed Insured or immediate family members of the Proposed Insured?   ☐ Yes   ☐ No
 If Yes, please identify all parties involved and provide copies of all financing agreements or promissory notes and all related side agreements and schedules. (Provide details in Remarks section, Question 48.)

28. a. Date to Save Age?  ☐ Yes  ☒ No    b. Specific Policy Date? ☐ Yes  ☒ No  Date _____

**Additional Benefits (if available)**

29. ☐ Waiver of Premium   ☐ Other (description and amount) _____

---

**SECTION G    OTHER INSURANCE**

30. a.  Excluding this application, amount of insurance currently pending with other companies. If NONE state NONE. $ _NONE_____

 b.  Of the above pending amount in 30.a., how much do you intend to accept?                    $ _____

 c.  Provide information for each policy in force (except group insurance). (If necessary, use Remarks section, Question 48.)
 If NONE state NONE.

| Company | Policy Number | Face Amount | Business? Yes | Business? No | Issue Date | Replacing? Yes | Replacing? No | Beneficiary |
|---------|---------------|-------------|------|-----|-----------|------|------|-------------|
|  |  |  | ☐ | ☐ |  | ☐ | ☐ |  |
|  |  |  | ☐ | ☐ |  | ☐ | ☐ |  |
|  |  |  | ☐ | ☐ |  | ☐ | ☐ |  |
|  |  |  | ☐ | ☐ |  | ☐ | ☐ |  |

Yes     No

31. Have you ever had an application for life or health insurance declined, postponed, modified, rated or offered with a reduced face amount? (If Yes, provide details in Remarks section, Question 48.)

32. Will you, or are you likely to, replace, end, or change existing insurance or annuity with any company or society with the insurance for which you are applying? (If Yes, the broker may be required to provide additional forms for your review and signature.)

33. Are there any plans to sell or permanently assign the policy to another person or entity, life settlement provider or an investor, or will it replace a policy that has already been sold to another life settlement company or investor? (If Yes, provide details in Remarks section, Question 48.)

---

# EXHIBIT A

Case 1:20-cv-00036-DCN Document 47 Filed 08/09/21 Page 31 of 58

**PART 1** (continued)

Page 3 - ICC08-1-IA (10/08)

**SECTION H    GENERAL QUESTIONS**   (Explain all Yes answers in Remarks section, Question 48.)

| | Yes | No |
|---|---|---|

3c. Has any person promised or agreed to give or have they given to any party to the application, any inducement, fee or compensation as an incentive to purchase the policy?

35. Has any party to the application ever sold, transferred or assigned any life insurance policy to a life settlement entity, the settlement entity, insurance company, other secondary market provider, or premium financing entity?

36. Has any party to the application ever received inducement, fee or compensation as an incentive to purchase, sell, transfer or assign a policy?

37. In the past 5 years, have you requested or received a Worker's Compensation, Social Security, or disability income payment?

38. Have you ever been convicted of, or are you currently charged with, a felony or misdemeanor, or are you currently on parole or probation?

39. In the past 5 years, has your driver's license been suspended or revoked, or have you been convicted of 2 or more moving violations or accidents?

40. In the past 5 years, have you been convicted of, or plead guilty to or no contest to, driving while impaired, intoxicated, or under the influence of alcohol or drugs? (If Yes, complete Alcohol/Drug Usage Questionnaire.)

41. Are you a member, or do you intend to become a member, of the armed forces, including the reserves?

**SECTION I    OTHER ACTIVITIES**

42. Do you hold a current pilot license, or have you in the past 5 years flown, or within the next 2 years do you intend to fly, other than as a passenger in any type of aircraft? (If Yes, complete Aviation Questionnaire.)

43. Have you in the past 2 years engaged in, or within the next 2 years do you intend to engage in, certain activities such as hang gliding, hot-air ballooning, ultra-light flying, heli-skiing, mountain, ice or rock climbing, cliff or scuba diving, motor vehicle racing, motorcycle or any other motorized land or water vehicle racing, or scuba or sky diving? (If Yes, complete appropriate questionnaire.)

44. Do you intend to travel outside the U.S. or Canada, or change your country of residence in the next 12 months? (If Yes, list countries, cities, duration and purpose of travel in Remarks section, Question 48.)

**SECTION J    PROPOSED INSURED FINANCIAL INFORMATION**

Complete this section when applying for face amount over $1,000,000 or when the Proposed Insured is over age 65:

45. a. What is the purpose of this insurance? (e.g. income replacement, buy-sell, keyperson, estate conservation)

    b. How was the need for the face amount determined?

    c. In the last 5 years, has the Proposed Insured filed for bankruptcy or had any charge off of bad debts?   Yes   No
       If Yes, type of bankruptcy and discharge date or charge off date.

46. a. Gross annual earned income (salary, bonuses, etc. from W-2 only)    $
    b. Gross annual unearned income (dividends, brokers, rental income, etc.)    $
    c. Is the Proposed Insured self-supporting?    Yes   No
       If No, how much insurance is in-force on the life of the person providing the support?    $
       What is that person's relationship to the Proposed Insured?

ICC08-1-IA (10/08)                                                      Page 3

# EXHIBIT A

**EXHIBIT A**

Submit this page with the rest of the application even if no information entered.

**PART 1** (continued)

**SECTION K BUSINESS FINANCIAL INFORMATION**

**Complete this section when applying for face amount over $1,000,000 and if Beneficiary or Owner is a business:**

| | Current YTD | Previous Year |
|---|---|---|
| 47. a. Assets | $ | $ |
| b. Liabilities | $ | $ |
| c. Gross Sales | $ | $ |
| d. Net Income after taxes | $ | $ |
| e. Fair Market Value of the business | $ | $ |

f. How long has the business been established? __________

g. What percentage of the business does the Proposed Insured own? __________

| | Yes | No |
|---|---|---|
| h. Are other partners/owners/executives being insured? (If Yes, use Remarks section, Question 48.) | ☐ | ☐ |
| i. In the last 5 years, has the business filed for bankruptcy or had any charge off of bad debts? | ☐ | ☐ |

If Yes, type of bankruptcy and discharge date or charge off date: __________

j. Company web site address, if available __________

48. Remarks: Explanations and/or special requests. Use Part 1 Supplement to Application if necessary.

**IN CONNECTION WITH THIS APPLICATION FOR INSURANCE, IT IS UNDERSTOOD AND AGREED THAT:**

I/we have read the application and all statements and answers contained in Part 1 and Part 2 of this application and any supplements thereto, copies of which shall be attached to and made a part of any policy to be issued, are true and complete to the best of my/our knowledge and belief, and made to induce Banner Life Insurance Company (the Company) to issue an insurance policy. The statements and answers in the application are the basis for any policy issued by the Company, and no information about me will be considered to have been given to the Company unless it is stated in the application. I agree to notify the Company of any changes to the statements and answers given in any part of the application before accepting delivery of any policy.

No agent or other person has power to: (a) accept risk; (b) make or modify contracts; (c) make, void, waive or change any conditions or provisions of the application, policy or receipt, as applicable; (d) waive any Company rights or requirements; (e) waive any information the Company requests; (f) discharge any contract of insurance; or (g) bind the Company by making promises respecting benefits upon any policy to be issued.

I agree that: (1) I/we will notify the Insurer if any statement or answer given in any part of the application changes prior to policy delivery; and (2) except as provided in the Temporary Insurance Application and Agreement, if any, insurance will not begin unless all persons proposed for insurance are living and insurable as set forth in the application at the time a policy is delivered to and accepted by the Owner, and the first modal premium is paid.

Changes or corrections made by the Company and noted in Part 1, Question 48 above are ratified by the Owner upon acceptance of a contract containing this application with the noted changes or corrections. In those states where written consent is required by statute or State Insurance Department regulation for amendments as to plan, amount, classification, age at issue, or benefits, such changes will be made only with the Owner's written consent.

**AUTHORIZATION TO OBTAIN AND DISCLOSE INFORMATION**

I hereby authorize any physician, medical professional, hospital, clinic or medical care facility, pharmacy benefit manager, prescription database, any insurance or reinsurance company; any consumer reporting agency or insurance support organization; my employer; or the Medical Information Bureau (MIB), to provide the Company and its legal representatives or affiliated insurers, all information they have pertaining to: medical consultations; treatments; hospitalizations for physical and/or mental conditions, use of drugs or alcohol; drug prescriptions; or any other information for me. Other information could include items such as: other insurance information; personal finances; habits; hazardous avocations; motor vehicle records; court records; or foreign travel, etc.

I understand that the information obtained will be used by the Company to determine my eligibility for insurance. I authorize that any information gathered during the evaluation of my application may be disclosed to: reinsurers; the MIB; other persons or organizations performing business or legal services in connection with my application or claim; any physician designated by me; or any person or entity required to receive such information by law or as I may further consent.

I understand that this consent may be revoked at any time by sending a written request to the Company. Attn: Director of Underwriting, Banner Life Insurance Company, 3275 Bennett Creek Avenue, Frederick, Maryland 21704.

The consent will be valid for 24 months from the date of this application. I agree that a copy of this consent will be as valid as the original. I authorize the Company to obtain an investigative consumer report on me. I understand that I may request to be interviewed for the report and receive, upon written request, a copy of such report.

If an investigative consumer report is prepared, I elect to be interviewed: ☒ Yes ☐ No

**DECLARATION**

I/we have carefully read the Temporary Insurance Application and Agreement (TIAA) and understand and agree to the terms thereof including the conditions under which a limited amount of Insurance may become effective prior to policy delivery. I/we understand that all premium checks are to be made payable to Banner Life Insurance Company (payee should not be left blank); checks are not to be made payable to the agent, agency or other third party. I/we have received the Notice to Proposed Insured, which includes the Medical Information Bureau Pre-Notice Disclosure and the Federal Fair Credit Reporting Notice.

Any person who knowingly presents a false statement in an application for insurance may be guilty of a criminal offense and subject to penalties under state law. Please see fraud warnings on page 6 prior to signing this application.

| | | |
|---|---|---|
| _(signature)_ Signature of Proposed Insured | Signed at Fruitland, ID _City/State_ | on 7/12/16 |
| Signature of Owner (if other than Proposed Insured) If Owner is a firm or corporation, include officer's title with signature | Signed at _City/State_ | on ___/___/___ |
| Print Owner/Officer Name and Title (if applicable) | | |
| _Mary Johnson (signature)_ Signature of Licensed Insurance Agent | Signed at Fruitland ID _City/State_ | on 07/12/2016 |

ICC08-LIA (10/08)                                                                 Page 5


EXHIBIT A

Page 7 - ICC08-LIA (10/08)

Legal & General
AMERICA

Banner Life Insurance Company
3275 Bennett Creek Avenue
Frederick, Maryland 21704
(800) 638 8428

**PART 2**
Medical History

1. Name of Proposed Insured _Jeremy Clay Eggers_    Date of Birth _____

2. Height     3. Weight
   If your weight has changed by over 10 lbs. in the last year, indicate amount and reason   _NO_

**PHYSICIAN INFORMATION**

4. Primary Physician
   Name
   Address
   Telephone
   Reason last seen and results of visit

5. Physician Last Consulted
   Name
   Address
   Telephone
   Reason

6. Has a parent or sibling ever been diagnosed or treated by a member of the medical profession for heart or kidney disease, stroke, diabetes, cancer, melanoma, suicide, Huntington's Disease, Sickle Cell Disease or Familial Adenomatous Polyposis (FAP)? If Yes, give details in the Family History chart below.    Yes    No

   Family History: Include the age at onset/event for each medical condition.

| | Medical Conditions | Age at Onset/Event | Age if Living | Cause of Death | Age at Death |
|---|---|---|---|---|---|
| Father | | | | | |
| Mother | | | | | |
| Brothers | | | | | |
| Sisters | | | | | |

**MEDICAL HISTORY** - Provide details to Yes answers in the Remarks section. Include provider, date, symptoms, diagnosis and treatment.

   Yes    No    Remarks - Explain All Yes Answers. Enter question number before detailed response.

Questions 7–22, have you ever consulted a member of the medical profession regarding or have you been diagnosed or treated for:

7. High blood pressure, high cholesterol, abnormal electrocardiogram, chest pain, irregular heart rhythm, palpitations, heart murmur, heart attack, angina, phlebitis, peripheral vascular disease, or any other disease or disorder of the heart or blood vessels?

8. Hepatitis, ulcer, internal bleeding, colitis, acid reflux, GERD, or any other disease or disorder of the stomach, gall bladder, esophagus, liver, pancreas, spleen, intestines, colon, or rectum?

9. A disorder of your blood or immune system including anemia, blood clots, bleeding, immune deficiency, leukemia, or lymphoma (excluding HIV)?

ICC08-LIA (10/08)      Page 7

# EXHIBIT A

**PART 2 - Medical History (continued)**

| Name of Proposed Insured | Yes | No | Remarks - Explain All Yes Answers |
|---|---|---|---|
| 10. Cancer, tumor, melanoma, or any other malignant disorder? | | | |
| 11. Diabetes or high blood sugar or any other disease or disorder of the pituitary, thyroid, or endocrine glands? | | | |
| 12. Albumin, protein, blood or sugar in the urine or any other disease or disorder of the kidney or bladder? | | | |
| 13. Cyst, polyp, lump, or other growth, or any disease or disorder of the skin or lymph nodes? | | | |
| 14. Any disease or disorder of the uterus, cervix, ovaries, or breasts? | | | |
| 15. Any disease or disorder of the prostate or reproductive system? | | | |
| 16. Any sexually transmitted disorders or diseases? | | | |
| 17. Pregnancy, complications of pregnancy or infertility? If now pregnant, what is the expected date of delivery? _____ | | | |
| 18. Asthma, shortness of breath, chronic cough or hoarseness, bronchitis, emphysema, COPD (chronic obstructive pulmonary disease), sarcoidosis, pneumonia, TB (tuberculosis), sleep apnea, or any other disorder of the respiratory system? | | | |
| 19. A disorder of the brain, spinal cord, or nervous system including chronic headaches, convulsions or loss of consciousness, seizures, tremors, paralysis, fainting, stroke, MS (multiple sclerosis), or TIA (transient ischemic attack)? | | | |
| 20. Depression, anxiety, psychosis, suicidal thoughts or attempts of suicide, anorexia or bulimia, obsessive compulsive disorder, bipolar disorder, or other mental, nervous or emotional disorder? | | | |
| 21. Arthritis or disorder of the bones, skin or muscles? | | | |
| 22. Any disease or disorder of the eyes, ears, nose or throat? | | | |
| 23. In the last 5 years, unless previously stated on this application, have you: a. Been treated by a member of the medical profession or at a medical facility? b. Had an electrocardiogram, x-ray, blood test, or other diagnostic test, excluding an HIV test? c. Had surgery or biopsy, or been an inpatient or outpatient in a hospital, clinic, or other medical or mental health facility? d. Been advised by a member of the medical profession to have surgery, medical treatment, biopsy, or diagnostic testing, excluding HIV testing, that has not yet been completed? e. Been referred to any other member of the medical profession or medical facility? f. Been unable to work, attend school or perform the normal activities of like age and gender, or been confined at home? | | | |
| 24. a. Have you ever used amphetamines, barbiturates, cocaine, heroin, crack, marijuana, LSD, PCP or other illegal, restricted or controlled substances, except as prescribed by a licensed physician? If Yes, please provide dates of use: From _____ To _____ Name of drug used: _____ Amount and frequency of use: _____ | | | |

EXHIBIT A

Page 9 - ICC08-LIA (10/08)

PART 2 - Medical History (continued)

| Name of Proposed Insured | Yes | No | Remarks - Explain All Yes Answers |
|---|---|---|---|
| 24. b. Have you ever been addicted to prescription medication or been advised by a physician to discontinue using habit forming drugs?.......... If Yes, provide dates of use, type and frequency. | | | |
| 25. Have you ever: | | | |
| a. Consumed alcoholic beverages?.......... If Yes, give type and number of drinks per day and/or per week. Date of last consumption: 7/4/16 _ or less per week | | | |
| b. Been advised by a physician or other licensed medical practitioner to limit or cease the use of alcoholic beverages? | | | |
| c. Been counseled, sought help or treatment, or been advised by a physician or other licensed medical practitioner to undergo counseling or treatment for alcohol problems?.......... | | | |
| d. Attended or joined any organization due to alcohol or related problems? ...... | | | |
| 26. Are you currently: | | | |
| a. Taking or have you been advised to take any prescribed medication (other than contraceptives)?.......... | | | |
| b. Taking any herbal or non-prescription medication at least weekly?.......... If Yes, give details. | | | |
| 27. Have you taken any other medications in the past 2 years?.......... If Yes, list in Remarks section at right. | | | |
| 28. Have you tested positive for exposure to the HIV infection or been diagnosed as having ARC (AIDS-Related Complex) or AIDS (Auto-Immune Deficiency Syndrome) caused by HIV infection or other sickness or condition derived from such infection?.......... | | | |
| 29. In the past 5 years, have you been diagnosed, treated, tested positive for, or been given medical advice by a member of the medical profession for any disease or disorder not previously stated on this application?.......... If Yes, give details. | | | |
| 30. Additional remarks (please indicate which question number remarks reference) | | | |

I have read the answers as written before signing, the answers are true and complete to the best of my knowledge and belief, and there are no exceptions to any answers other than written on this document.

Signature of Proposed Insured

Signed at Fruitland, ID    on 7/12/16
City/State        Date

ICC08-LIA (10/08)        Page 9

# EXHIBIT A

# EXHIBIT A

 **Renewable and Convertible Term Life Insurance.**

A change of premium provision is applicable subject to Guaranteed Maximum Premiums

The face amount is payable at death while the Policy is in force prior to Expiration Date

Premiums are payable as shown in the Policy Schedule to the Expiration Date or until the death of the Insured

This Policy is renewable to the Expiration Date

This Policy is convertible to the end of the Policy conversion period

This Policy is nonparticipating and no dividends are payable



ICC12OPTN



STATEMENT OF POLICY COST AND BENEFIT INFORMATION FOR POLICY 181239991

ANY CORRESPONDENCE REGARDING THIS POLICY SUMMARY MAY BE FORWARDED EITHER TO OUR HOME OFFICE OR TO THE AGENT LISTED BELOW:

PREPARED BY:

BANNER LIFE INSURANCE COMPANY
3275 BENNETT CREEK AVENUE
FREDERICK, MD 21704

AGENT:
THE INSURANCE GROUP INC
112E 6TH ST
EMMETT, ID 83617

THIS POLICY SUMMARY WAS PREPARED ON OCTOBER 05, 2016 FOR THE LIFE OF
JEREMY CLAY EGGERS ( MALE ) ISSUE AGE 40.

YOUR COVERAGE CONSISTS OF A RENEWABLE AND CONVERTIBLE TERM POLICY WITH A CHANGE OF PREMIUM PROVISION. THE TOTAL ANNUAL PREMIUM WILL INCLUDE THE COST FOR WAIVER OF PREMIUM BENEFIT, ACCIDENTAL DEATH BENEFIT, OR RATED EXTRAS IF ISSUED IN YOUR POLICY.

| AGE | YEAR | ANNUAL PREMIUMS GUAR MAX | CUMULATIVE PREMIUMS GUAR MAX | FACE AMOUNT OF INSURANCE |
|---|---|---|---|---|
| 40 | 1 | | | 1,000,000 |
| 41 | 2 | | | 1,000,000 |
| 42 | 3 | | | 1,000,000 |
| 43 | 4 | | | 1,000,000 |
| 44 | 5 | | | 1,000,000 |
| 45 | 6 | | | 1,000,000 |
| 46 | 7 | | | 1,000,000 |
| 47 | 8 | | | 1,000,000 |
| 48 | 9 | | | 1,000,000 |
| 49 | 10 | | | 1,000,000 |
| 50 | 11 | | | 1,000,000 |
| 51 | 12 | | | 1,000,000 |
| 52 | 13 | | | 1,000,000 |
| 53 | 14 | | | 1,000,000 |
| 54 | 15 | | | 1,000,000 |
| 55 | 16 | | | 1,000,000 |
| 56 | 17 | | | 1,000,000 |
| 57 | 18 | | | 1,000,000 |
| 58 | 19 | | | 1,000,000 |
| 59 | 20 | | | 1,000,000 |
| 60 | 21 | | | 1,000,000 |
| 61 | 22 | | | 1,000,000 |
| 62 | 23 | | | 1,000,000 |
| 63 | 24 | | | 1,000,000 |
| 64 | 25 | | | 1,000,000 |
| 65 | 26 | | | 1,000,000 |
| 66 | 27 | | | 1,000,000 |
| 67 | 28 | | | 1,000,000 |
| 68 | 29 | | | 1,000,000 |
| 69 | 30 | | | 1,000,000 |

| LIFE INSURANCE COST INDICES: | GUARANTEED PREMIUM | |
|---|---|---|
| | 10 YEAR | 20 YEAR |
| SURRENDER COST INDEX | 1.23 | 1.23 |
| NET PAYMENT INDEX | 1.23 | 1.23 |

AN EXPLANATION OF THE INTENDED USE OF THESE INDICES IS PROVIDED IN THE LIFE INSURANCE BUYER'S GUIDE. THESE INDICES ARE USEFUL ONLY FOR THE COMPARISON OF RELATIVE COSTS OF TWO OR MORE SIMILAR POLICIES.



EXHIBIT A



**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
800-638-8428
www.LGAmerica.com

**Privacy Policy**

**Our corporate policy**

Your privacy is important to us. At Banner Life Insurance Company, we understand that the information you provide to us or we collect about you is private.

This privacy policy is provided to you so that you will understand what Banner Life does with the personal information you provide to us and the measures we take to protect your privacy.

**Who has access to customer information?**

The information that you provide to us is used for Banner Life purposes only. Banner Life employees and independent agents have access to your information, and are authorized to review it, only for the purpose of carrying out their official duties and responsibilities. Banner Life employees and independent agents are required to keep customer information confidential.

**Why does Banner Life collect and maintain information?**

As a regulated insurance carrier, Banner Life is required by state laws and regulations to collect and maintain certain information about its customers. The information we collect also enables us to provide you with services and products that meet your individual needs and to provide you with the high level of customer care that you have come to expect from Banner Life.

**What type of information does Banner Life collect and maintain?**

Banner Life Collects and maintains various types of information about its customers. The types of information we collect and maintain about you may include:

- Information that you submit to us, such as your name, address, telephone number, and Social Security Number.
- Information about your transactions with Banner Life, such as payment history and account balance.
- Information from non-affiliated third parties about your medical, employment and income history; your assets and liabilities and your driving record.
- Information from consumer reporting agencies about your credit history.
- Information about you that may be derived from your visits to Banner Life's websites.

**Does Banner Life disclose customer information to, or share customer information with, outsiders?**

Banner life does not disclose any non-public personal financial or any non-public personal medical information about our customers or former customers to anyone except as permitted or required by law.

It is Banner Life's current policy not to disclose customer information to, or share customer information with, other businesses for marketing purposes.

If this policy should change, Banner Life will notify you by mail, and you will be given an opportunity to request that your information not be disclosed to, or shared with other businesses for marketing purposes.

LU1236 (8/01)


EXHIBIT A

**How can I contact Banner Life if I have privacy questions?**

If you have any question about the privacy of your information, you can contact the Customer Service Department by:

**Mail:**       Customer Service Department
Banner Life Insurance Department
3275 Bennett Creek Avenue
Frederick, MD 21704

               or

**E-mail:**    customerservice@bannerlife.com

               or

**Phone:**    1-800-638-8428

LU1236 (8/01)

# EXHIBIT A



**Banner Life Insurance Company**
3275 Bennett Creek Avenue
Frederick, Maryland 21704
800-638-8428
www.LGAmerica.com

## CURRENT POLICY SPECIFICATIONS

Insured: JEREMY CLAY EGGERS                    Policy Number:    181239991

Policy Owner(s): JEREMY CLAY EGGERS

Base Plan of Insurance: 30 Year Term

Base Face Amount: $1,000,000                    Policy Date:    10/05/2016

Issue Date: 09/14/2016                          Premium Mode:   MONTHLY

                                                Premium Amount:

Rider Type/Amount: N/A

---

## POLICY DELIVERY RECEIPT

Please sign and date this document below to certify that you have received the Policy and understand the information in this document. The free look period of the Policy begins with the signing of this document and provides you the opportunity to review the Policy, and if not satisfied, return it for a full refund of premium. (Refer to the contract for the duration of the free look period.)

Coverage under the Policy will begin on the date this Delivery Receipt is signed and given to a Company representative along with the first modal premium payment and all Delivery Requirements are met, provided all persons proposed for insurance under the Policy are living and insurable as described in each part of the application for the Policy.

You are entitled to request a different Policy Date than the one that appears on the Policy. **If all of the above requirements are met, coverage will begin on the date this Delivery Receipt is signed by the Owner,** even though premiums are billed from the Policy Date. If the Policy Date is earlier than today's date, you will pay premiums for a period of time during which the Policy did not provide coverage. You may avoid paying such premiums by having the Company change the Policy Date on the Policy to today's date.

Check A or B:

**Please note, if you sign this delivery receipt before the Policy Date of 10/05/2016, this policy does not need to be reissued with a different policy date.**

A.  ☒   I hereby accept the Policy Date of 10/05/2016. I understand that the Policy coverage begins the date this Delivery Receipt is signed, even though my premiums are being billed from the Policy Date. Please sign and date both copies of this Delivery Receipt. Return one copy along with the premium payment and any other delivery requirements.

B.  ☐   I hereby request that the Company change the Policy Date to the date this document was signed. I understand that changing the Policy Date to the date this Delivery Receipt is signed, may change my insurance issue age and may result in an increase in the premium amount and my policy will be reissued with a new Policy Date and Issue Date. I understand that by paying my first modal premium and signing this Delivery Receipt today, the Policy will take effect and will provide coverage beginning today, subject to all contractual provisions, while the Policy Date is being changed. Please sign and date both copies of this Delivery Receipt. Return one copy along with the premium payment, any other delivery requirements. Retain the second copy of the Delivery Receipt for your records and keep it with the reissued Policy that will be forthcoming.

By signing below, I/we certify we have received the Banner Life Insurance policy, read and reviewed the application, the first modal premium has been paid and the proposed insured's health and medical history remain in every aspect as described in the application. I/we also certify that I/we fully understand the contents of this Delivery Receipt stated above, and no one has made any representations that contradict the language in this Receipt.

_____         _____         9-23-16
Signature of Policy Owner           Title (if Owner is Business or Trust)        Date



LP173 (9-15)

BANNER LIFE INSURANCE COMPANY

Frederick, Maryland

AMENDMENT TO APPLICATION

PROPOSED INSURED - JEREMY CLAY EGGERS

FILE NUMBER - 181239991       DATE OF APPLICATION - 07/12/2016

THE BANNER LIFE INSURANCE COMPANY IS HEREBY AUTHORIZED TO
AMEND THE APPLICATION IDENTIFIED ABOVE IN THE FOLLOWING MANNER:

IT IS AGREED THAT THIS AMENDMENT SHALL FORM A PART OF MY APPLICATION AND
THAT A COPY HEREOF IS TO BE ATTACHED TO THE POLICY.

_____      9-23-16
Proposed Insured's Signature          Date

_____      9-23-16
Signature of Policy Owner       Title, if Owner is Business or Trust

LU-14(54-62)

BANNER LIFE INSURANCE COMPANY    **EXHIBIT A**



EXHIBIT "B"


# EXHIBIT A

# STATE OF IDAHO
## CERTIFICATION OF VITAL RECORD

# STATE OF IDAHO
### IDAHO DEPARTMENT OF HEALTH AND WELFARE
### BUREAU OF VITAL RECORDS AND HEALTH STATISTICS

Item 28b, 37-changed, 27a-b, 31 completed per supplemental  8-16-2019 pas

**State of Idaho**
**CERTIFICATE OF DEATH**

DATE FILED BY STATE REGISTRAR 08/18/2019

STATE FILE #

ONLY A COPY OF THIS DOCUMENT, CERTIFIED BY THE STATE REGISTRAR WITH THE DEPARTMENT OF HEALTH AND WELFARE RAISED SEAL, SHALL BE USED AS PRIMA FACIE EVIDENCE OF THE DEATH UNDER §39-241(4) AND §39-271, IDAHO CODE

Local Reg No

**DECEDENT**

1 DECEDENT'S LEGAL NAME (include AKA # if any) (First, Middle, Last, Suffix): **JEREMY CLAY EGGERS**

2 SEX: **MALE**

3 SOCIAL SECURITY NUMBER

4a AGE-Last Birthday (Years) | 4b UNDER 1 DAY Months Days | 4c UNDER 1 DAY Hours Minutes | 5 DATE OF BIRTH (Mo/Day/Yr)

6 BIRTHPLACE (City and State, Territory, or Foreign Country): **CALDWELL, IDAHO**

7a RESIDENCE STATE OR FOREIGN COUNTRY: **IDAHO**
7b COUNTY: **PAYETTE**
7c CITY OR TOWN: **NEW PLYMOUTH**

7d STREET AND NUMBER

7e APT NO | 7f ZIP CODE **83655** | 7g INSIDE CITY LIMITS? ☐ Yes ☒ No

8 SURVIVING SPOUSE'S NAME (if wife, give maiden name)

☐ Married ☐ Married (but separated) ☐ Widowed ☒ Divorced ☐ Never married ☐ Unknown

**PARENTS**

10 EVER IN U S ARMED FORCES? ☐ Yes ☒ No

11a. FATHER'S NAME (First, Middle, Last, Suffix)

11b BIRTHPLACE (State, Territory or Foreign Country): **OREGON**

12a. MOTHER'S MAIDEN NAME (First, Middle, Last, Suffix)

12b BIRTHPLACE (State, Territory or Foreign Country): **IDAHO**

**INFORMANT**

13a NAME | 13b RELATIONSHIP TO DECEDENT: **MOTHER** | 13c ADDRESS (Street and Number, City, State, Zip Code)

**DISPOSITION**

14 METHOD OF DISPOSITION ☐ Burial ☒ Cremation ☐ Donation ☐ Entombment ☐ Removed from state ☐ Other (Specify)

15 PLACE OF DISPOSITION (Name and address of cemetery, crematory, other place): **FLAHIFF CREMATORY 624 CLEVELAND BOULEVARD CALDWELL, IDAHO 83605**

16 NAME AND COMPLETE ADDRESS OF FUNERAL FACILITY: **SHAFFER-JENSEN MEMORY CHAPEL 112 NORTH NINTH STREET PAYETTE, IDAHO 83661**

17a SIGNATURE OF FUNERAL SERVICE LICENSEE OR PERSON ACTING AS SUCH ▶ **ELECTRONICALLY FILED JAMES H OPDAHL**

17b LICENSE NUMBER (Of licensee) **M0723**

18 WAS CORONER CONTACTED DUE TO CAUSE OF DEATH? ☒ Yes ☐ No

**PLACE OF DEATH**

PLACE OF DEATH

18a IF DEATH OCCURRED IN A HOSPITAL: ☐ Inpatient ☐ ER/Outpatient ☐ DOA

18b IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL: ☐ Hospice facility ☐ Nursing home/Long term care facility ☐ Decedent's home ☐ Other (Specify) **MAN MADE LAKE**

20 FACILITY NAME (If not facility, give street and number): **3706 ELMORE ROAD**

21 CITY, TOWN OR LOCATION OF DEATH, AND ZIP CODE: **PARMA, ID 83660**

22 COUNTY OF DEATH: **PAYETTE**

**DATE OF DEATH**

23 DATE OF DEATH (Mo/Day/Yr) (Spell month): **May 17, 2019**

24 TIME OF DEATH (24Hr): Estimated 16 10 17 18

25 DATE PRONOUNCED DEAD (Mo/Day/Yr) (Spell month): **May 18, 2019**

26 TIME PRONOUNCED DEAD (24Hr): **14 53**

**CAUSE OF DEATH**

27 CAUSE OF DEATH

PART I  Enter the chain of events—diseases, injuries or complications—that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE  Enter only one cause on a line

| | | Approximate Time Interval Onset to Death |
|---|---|---|
| IMMEDIATE CAUSE (First disease or condition resulting in death) → a. | **PENDING - FRESHWATER DROWNING** | **IMMEDIATE** |
| | DUE TO (or as a consequence of) | |
| Sequentially list conditions if any leading to the cause listed on line a  Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) b. | **SKIDLOADER CRASHED AND SUBMERGED INTO A LAKE** | **IMMEDIATE** |
| | DUE TO (or as a consequence of) c. | |
| | DUE TO (or as a consequence of) d. | |

PART II  Enter other significant conditions contributing to death but not resulting in the underlying cause given in Part I

28a WAS AN AUTOPSY PERFORMED? ☒ Yes ☐ No

28b WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH? ☒ Yes ☐ No

29 DID TOBACCO USE CONTRIBUTE TO DEATH? ☐ Yes ☐ Probably ☒ No ☐ Unknown

30 IF FEMALE (Aged 10-54) ☐ Not pregnant within past year ☐ Pregnant at time of death ☐ Not pregnant, but pregnant within 42 days of death ☐ Not pregnant, but pregnant 43 days to 1 year before death ☐ Unknown if pregnant within the past year

31 MANNER OF DEATH ☐ Natural ☒ Accident ☐ Suicide ☐ Homicide ☐ Pending Investigation ☐ Could not be determined

**CERTIFIER**

32 DATE OF INJURY (Mo/Day/Yr) (Spell month): **May 17, 2018**

33 TIME OF INJURY (24Hr): Estimated 16 30 17 18

34 PLACE OF INJURY (Decedent's home, farm, street, construction site nursing home, restaurant, forest, lot): **MAN MADE LAKE**

35 INJURY AT WORK? ☐ Yes ☒ No

36 LOCATION OF INJURY  State **IDAHO**  City/Town or County **PARMA, PAYETTE**  Zip Code **83660**

Street and Number or Location **3706 ELMORE ROAD**  Apartment Number

37 DESCRIBE HOW INJURY OCCURRED (IF TRANSPORTATION INJURY STATE THE TYPE(S) OF VEHICLE(S) INVOLVED (Automobile, pickup, motorcycle, ATV, bicycle, etc.) SPECIFY WHICH VEHICLE DECEDENT OCCUPIED If applicable: **DECEDENT WAS OPERATING A SKIDLOADER WHICH BECAME SUBMERGED IN A LAKE**

38a IF TRANSPORTATION INJURY, SPECIFY: 38a WAS DECEDENT: ☒ Driver/Operator ☐ Passenger ☐ Pedestrian ☐ Other (Specify)

38b WHAT SAFETY DEVICE(S) DID DECEDENT USE/EMPLOY: ☐ Seat belt ☐ Child safety seat ☐ Helmet ☐ Air bag ☒ None ☐ Unknown

14a CERTIFIER (Check only one based on official capacity for this certification)
☐ PHYSICIAN ☐ PHYSICIAN ASSISTANT ☐ ADVANCED PRACTICE REGISTERED NURSE  To the best of my knowledge death occurred at the time date and place and due to the cause(s) and manner stated
☒ CORONER  On the basis of examination and/or investigation, in my opinion, death occurred at the time date and place and due to the cause(s) and manner stated

14b LICENSE NUMBER

Signature and Title of Certifier ▶ **ELECTRONICALLY SIGNED  KEITH SCHULLER**

39a DATE SIGNED 8 / 17 / 2019 MM DD YYYY

19d NAME ADDRESS AND ZIP CODE OF CERTIFIER (Type or print): **KEITH SCHULLER, 1130 3RD AVE. N  PAYETTE, ID 83661**

**REGISTRAR**

42a REGISTRAR'S SIGNATURE ▶ *James B Gillette*

42b DATE SIGNED 8 / 18 / 2019 MM DD YYYY

This is a true and correct reproduction of the document officially registered and placed on file with the IDAHO BUREAU OF VITAL RECORDS AND HEALTH STATISTICS

DATE ISSUED  **AUG 1 6 2019**

*James B Gillette*

**JAMES B AYDELOTTE**
**STATE REGISTRAR**

This copy not valid unless prepared on engraved border displaying state seal and signature of the Registrar



# EXHIBIT A



EXHIBIT "C"

# EXHIBIT A



June 4, 2019



RECEIVED
JUN 0 4 2019
BY:

Via First Class Mail
and Facsimile
(301) 279-4187

Banner Life Insurance Company
Legal & General America
Attn: Claims Department
3275 Bennett Creek Avenue
Frederick, Maryland 21704

> Re:  **Insured: Jeremy C. Eggers, Deceased**
> **Claim No.: LC96626**
> **Policy No.: 181239991**

Dear Claims Specialist:

Our firm has been retained by Talese Anderson, surviving Fiancé of the late Jeremy C. Eggers, to assist with her claim for death benefits that may be payable to her under the above-referenced policy. Attached is a Notice of Representation signed by Ms. Anderson. As Ms. Anderson is now represented by counsel, please direct your response and all future communications concerning this matter to me, until further notice. This includes payment of any claims made hereunder to Talese Anderson, as my firm has a lien against her claim.

This letters serves to contest payment of the death benefit to anyone other than Talese Anderson, pending resolution of this dispute. It is my understanding that the Insured executed a change of beneficiary designation naming Ms. Anderson as beneficiary, however, Banner Life Insurance Company is now stating that the change of beneficiary was never approved. This is also a request for a copy of all documents or other evidence relevant to this claim, including but not limited to, the change of beneficiary form executed by the Insured, any and all notice or correspondence sent to the Insured informing him the beneficiary change was incomplete, and any other evidence upon which the determination that Ms. Anderson is not the named beneficiary was based. I appreciate your prompt attention in noting our request and objection to payment pending resolution of this dispute.

If you have any questions about this correspondence, please do not hesitate to contact me. Thank you for your cooperation in this matter.

With warmest regards, I am,

Sincerely yours,

Brittany Root

Brittany Root
Attorney

Attachment

**INTERPLEADER LAW, LLC**

9015 Bluebonnet Blvd.          Phone: 225.246.8706          brittany.root@interpleaderlaw.com
Baton Rouge, Louisiana 70810   Fax: 888.200.3530            www.interpleaderlaw.com



# EXHIBIT A

**EXHIBIT "D"**

# EXHIBIT A

ACCIDENTAL DEATH POLICY

**EXHIBIT A**



# ACCIDENTAL DEATH INSURANCE POLICY.

Banner Life Insurance Company . 3275 Bennett Creek Avenue . Frederick, Maryland 21704 . 800-638-8428

**SPECIMEN**

### Renewable to Age 75.

## Policy Schedule

| | | | | |
|---|---|---|---|---|
| **Policy Owner:** | xxxxxxxxxxxxxxxxxxxxxxxx | | **Insured:** | xxxxxxxxxxxxxxxxxxxxxx |
| | xxxxxxxxxxxxxxxxxxxxxxxx | | | |
| **Policy No.:** | xxxxxxxx | | **Issue Age:** | x |
| **Effective Date:** | xxxxxxxxxxxx | | **Premium:** | xxxxxxxxxxxx |
| **Benefit Amount:** | xxxxxxxxxxxx | | | |

**THIS IS A LIMITED BENEFITS POLICY FOR ACCIDENTAL DEATH <u>ONLY</u> AND DOES NOT PAY BENEFITS FOR LOSS FROM SICKNESS, DISEASE, OR NATURAL CAUSES. READ YOUR POLICY CAREFULLY.**

THIS POLICY IS NOT A MEDICARE SUPPLEMENT POLICY.

**This Policy is a legal contract between the Policy Owner ("You") and Banner Life Insurance Company ("We" or "Us").** We will pay the Benefit Amount to the Beneficiary if the Insured dies from a covered loss due to an Accidental Injury while this Policy is in force. Such payment will be subject to the provisions, limitations, reductions, and exclusions of this Policy. **No coverage will take place until a valid authorization form and the payment of the first premium are received at Our Administrative Office.**

**RIGHT TO EXAMINE POLICY FOR 30 DAYS. You may return this Policy within 30 days from the date You received it. We will refund any premium paid and the Policy will be deemed void from the beginning.**

Signed for Banner Life Insurance Company at its Home Office in Frederick, Maryland.

*Bryan R. Newcombe*

Bryan R. Newcombe
Secretary

*Andrew D. Love*

Andrew D. Love
Senior Vice President,
Chief Financial Officer & Treasurer



Legal & General
AMERICA

ACD-ID (1-17)

# EXHIBIT A



SPECIMEN

## TABLE OF CONTENTS

General Provisions..................................................................................... 3

Definitions................................................................................................. 4

Exclusions................................................................................................. 4

Payment of Premiums............................................................................... 5

Claim Provisions....................................................................................... 5

Termination of Coverage.......................................................................... 6

# EXHIBIT A

ACD-ID (1-17)

## GENERAL PROVISIONS



**Entire Contract:** This Policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance. No change in this Policy shall be valid until approved by an executive officer at Our Administrative Office and unless such approval is endorsed hereon or attached hereto. No agent has authority to change this Policy or to waive any of its provisions.

**Change of Ownership:** You may name a new Owner by notifying Us in writing while the Insured is alive. When We receive acceptable signed notice, the change will take effect on the date the notice was signed. The change is subject to any action We may have taken before receiving the notice.

**Other Insurance with Us:** If an Insured is covered under more than one Accidental Death Policy with Us at any one time, Our maximum liability shall not exceed $1,000,000. Upon discovery of duplication in excess of Our maximum liability, We will refund excess premium to You or Your Beneficiary.

**Statements Made in the Application:** All statements made by the Insured in the application will be deemed representations and not warranties. Material misstatements will not be used to void this Policy or to deny a claim unless made in the Insured's application.

**Incontestable:** After this Policy has been in force for two years during the Insured's lifetime, We cannot contest statements, except for fraudulent statements, in the application of enrollment form.

**Conformity with State Statutes:** Any provision of this Policy which, on its Effective Date, is in conflict with the statutes of the state in which the Insured resides is hereby amended to conform to the minimum requirements of those statutes.

**Misstatement of Age:** If the Insured's age has been misstated, all amounts payable under the Policy will be those the premium paid would have purchased at the correct age.

**Legal Actions:** No action can be brought to recover under this Policy for at least 60 days after Satisfactory Proof of loss has been furnished. No such action shall be brought more than three years after the date proof of loss is required.

**Waiver:** Any waiver by Us of any requirement of this Policy will not constitute a continuing waiver of such requirements nor operate as a waiver or amendment to any Policy provision.

**Beneficiary:** The Beneficiary is as shown in the application or enrollment form. You may change the Beneficiary at any time before the Insured dies. The Beneficiary's consent is not required for this or any other change in the Policy, unless the designation of the Beneficiary is irrevocable. You must sign any change request and it must be recorded by Us to be effective. The change request must be signed before the Insured's death but may be recorded by Us after the Insured's death. The change will take effect on the date it was signed, subject to any payment We make or action taken by Us before We receive the request.

You may designate more than one Beneficiary and may designate what percentage of the Insured Benefit is to be paid to each Beneficiary. If not designated, Policy benefits will be split into equal shares. If a Beneficiary dies before the Insured, the benefit will be paid to the remaining Beneficiaries, if any. If no Beneficiaries are alive at the time of the Insured's death or if no valid Beneficiary has been designated, then the benefit will be paid to the estate of the Insured. Payment of the benefit to the administrator or executor of the estate of the Insured or any other person deemed by Us to be the representative of the Insured will relieve Us of any further liability for payment under this Policy.

**Reinstatement:** If any renewal premium is not paid within the time granted for payment, and Your Policy lapses, We may subsequently accept premium within three years after the date of lapse without requiring an application for reinstatement. However, We may require an application and proof of good health satisfactory to Us for reinstatement. We will issue a conditional receipt for all overdue premium received. The Policy will be reinstated upon Our approval of the new application or, upon the 45th day following the date of the conditional receipt, unless We have previously notified You in writing of Our disapproval of the application. The Insured must be alive on the date We approve the request for reinstatement. If the Insured is not alive, Our approval is void.

If We do not approve Your application, We will refund Your subsequent premium and the Policy will not be in effect. If We approve Your application, the reinstated Policy will only cover loss resulting from Accidental Death that occurs after the

ACD-ID (1-17)



SPECIMEN

date of reinstatement. In all other respects, You will have the same rights as You had under the Policy immediately before Your Policy lapsed, subject to the provisions of any rider which may be attached in connection with the reinstatement.

## DEFINITIONS

**Accidental Injury:** means an accidental bodily injury which is unforeseen and suddenly sustained without the design or intent of the Insured that:

1. is a direct result of an unintended, unanticipated accident that is external to the body;
2. is not caused nor contributed to, directly or indirectly, by a disease, bodily or mental infirmity, illness, infection, medicine or surgery used to treat the Insured, or any other cause or physical condition;
3. occurs while the Insured's coverage under this Policy is in force; and
4. which directly (independent of sickness, disease, mental incapacity, bodily infirmity, or any other cause) causes a covered loss within 90 days of the date of the accident.

**Administrative Office:** Our Administrative Office is located at 3275 Bennett Creek Avenue, Frederick, Maryland 21704.

**Attained Age:** means the sum of the Insured's age on the Effective Date plus the number of complete years since the Effective Date.

**Beneficiary:** means the person to receive the proceeds payable at the Insured's death.

**Effective Date:** means the time and date this Policy and the insurance provided by it become effective at 12:01 A.M. Eastern Time on the Effective Date shown in the Policy Schedule provided the necessary premiums have been paid.

**Home Office:** Our Home Office is located at 3275 Bennett Creek Avenue, Frederick, Maryland 21704.

**Insured:** is shown in the Policy Schedule.

**Issue Age:** is shown in the Policy Schedule and is the Insured's age last birthday on the Effective Date.

**Owner:** is shown in the Policy Schedule, unless later changed by the Owner. If no Owner is specified, the Insured is the Owner.

**Physician:** means a person who:

1. is not the Insured;
2. is not related to the Insured as a spouse or domestic partner, parent, child, or sibling;
3. does not customarily reside in the same household as the Insured;
4. is a legally qualified practitioner of the healing arts licensed in the United States by a state or federal licensing authority for such practitioners; and
5. is practicing within the scope of their license in the United States of America.

**Policy:** means the Accidental Death Insurance Policy specified in the Policy Schedule.

**Satisfactory Proof:** means proof determined to be satisfactory by Us.

**Written Notice:** means a notification or request received from the Owner in a form satisfactory to Us. Written Notices are recorded at Our Administrative Office. We will not be responsible for the validity of any Written Notice.

## EXCLUSIONS

**We will pay no benefits for any loss caused by, results in whole or in part from, or is contributed to, by:**

1. Suicide (sane or insane), attempted suicide or intentionally self-inflicted injury;
2. Mental or emotional disorders, alcoholism, drug addiction;
3. Sickness, disease, medical or surgical treatment;
4. Bacterial infection unless directly resulting from an Accidental Injury;
5. Insured's participation in a felony;
6. Insured engaging in an illegal activity or occupation;
7. Insured actively participating in a riot or civil insurrection;

ACD-ID (1-17)

# EXHIBIT A

8. Travel in or descent from an aircraft, if the Insured acted in a capacity other than as a fare-paying passenger on a regularly scheduled commercial flight;
9. Travel in an aircraft or device used for testing or experimental purposes, used by or for any military authority, or used for travel beyond the earth's atmosphere;
10. Declared or undeclared "war" or any "act of war";
11. Death while the Insured is incarcerated;
12. The Insured's being intoxicated or under the influence of a narcotic unless administered and taken in accordance with the advice of a Physician;
13. Participating in riding or driving an air, land, or water vehicle in a race, speed, or endurance contest;
14. The voluntary intake or use by means of poison, gas, or fumes, unless a direct result of an occupational incident;
15. Operating a mechanical or motorized device or motor vehicle while having a blood alcohol level at or above the legal limit at which it is unlawful to operate the mechanical or motorized device or motor vehicle (as defined in the jurisdiction where the accident occurred, or, if there is no limit specific to the motorized device, the limit at which it is unlawful to operate a motor vehicle);
16. Participation in, or performance of, military duty while in active military duty with the armed forces, National Guard, or organized reserve corps or units auxiliary thereto of any country or international authority, or;
17. Bungee jumping, BASE jumping, scuba-diving, rock or mountain climbing, and/or aeronautics (hang gliding, skydiving, parachuting, ultralight, soaring, ballooning, and parasailing).

## PAYMENT OF PREMIUMS

**Payment of Premiums:** The first premium must be paid during the Insured's lifetime before any insurance becomes effective. The due date of the first premium is the Effective Date. Your monthly renewal premiums will be deducted automatically from Your bank account. Direct bills for any other payment interval will be mailed to You prior to the due date.

**Right to Renew:** Subject to the provisions in the Termination of Coverage section and until age 75, this Policy is renewable at Your option subject to the Payment of Premiums when due.

**Grace Period:** This Policy has a 31 day Grace Period for the payment of each premium falling due after the first premium. This means that if a renewal premium is not paid on or before the date it is due, it may be paid during the following 31 days. During the Grace Period the Policy shall continue in force.

**Change of Premium:** We may, at Our sole discretion, change the premium for this Policy. Any change in premium will be uniform for all Insureds in the same rate class, on all policies bearing this form number in the state where this Policy is issued. Written Notice of any premium change will be mailed to You at Your last known address at least 60 days in advance.

## CLAIM PROVISIONS

**Notice of Claim:** Written Notice of Claim must be given within 20 days after a covered loss starts or as soon as reasonably possible. The notice can be given to Us at Our Administrative Office or to an agent authorized by Us. Notice should include the name of the Insured, and Claimant if other than the Insured, and the Policy number.

**Claim Form:** When We receive the Notice of Claim, We will send the Claimant forms for filing proof of loss. If these forms are not given to the Claimant within 15 days after the giving of such notice, the Claimant shall meet the proof of loss requirements by giving Us a written statement of the nature and extent of the loss within the time limit stated in the Proofs of Loss Section.

**Proofs of Loss:** Written Satisfactory Proof of the Insured's accidental death, at no cost to Us, must be received at Our Administrative Office before We pay the Accidental Death Benefit. Written proof must be given within 180 days after such loss. If it was not reasonably possible to give written proof in the time required, We shall not reduce or deny the claim for this reason if the proof is filed as soon as reasonably possible along with a satisfactory explanation of the delay. However, except for the absence of legal capacity, proof must be submitted within one year of the loss. Satisfactory Proof of Death may include, but is not limited to, completion of a Claim Form, completion of an authorization allowing Us to obtain medical and other information, a final certified death certificate. We reserve the right to require the completion of additional forms and reasonable documentation to establish cause and manner of death. Failure to file Satisfactory Proof of loss within the required time may invalidate any claim.

EXHIBIT A

**Autopsy:** We, at Our own expense and as allowed by law, have the right to require an Autopsy be performed while a claim is pending. When required by Us, and allowed by law, an autopsy will constitute a component of Satisfactory Proof of loss.

**Accidental Death Benefit Proceeds:** If an Accidental Injury causes the death of the Insured within ninety (90) days of the accident, the Accidental Death Benefit Proceeds payable at the Insured's death will be (1) plus (2) minus (3) where:

1. is the Death Benefit of this Policy, shown in the Policy Schedule, subject to any age reduction;
2. is the portion of any premium paid for a period beyond the Policy month in which the Insured's death occurs; and
3. is any premium which is due and unpaid.

**Payment of Claims:** Accidental Death Benefit Proceeds will be paid according to the Beneficiary designation in effect at the time and the Beneficiary provision of this Policy. If any Beneficiary is a minor or is not competent to give a valid release for the payment, the payment will be made to the legal guardian of the Beneficiary's property. If the Beneficiary has no legal guardian for their property, a payment not exceeding $1,000 may be made at Our option, to any relative by blood or connection by marriage of the Beneficiary, who has submitted reliable documentary evidence and in Our opinion, has assumed custody and support of the minor or responsibility for the incompetent person's affairs. Any payment made by Us in good faith shall be in full discharge of Our liability to the extent of such payment.

**Time of Payment of Claims:** We will pay all benefits for accidental death immediately upon receipt of Satisfactory Proof of loss.

## TERMINATION OF COVERAGE

All coverage under this Policy will terminate as of 12:01 A.M. Eastern Time on the earliest of:

1. The end of the Grace Period, is as described in Grace Period provision, if the minimum premium due was not received;
2. The date We receive Written Notice at Our Administrative Office to terminate or cancel the Policy;
3. The date of the Insured's death; or
4. The Insured's 75th birthday.

**Cancellation by Insured:** The Insured may cancel this Policy at any time by Written Notice delivered or mailed to Us effective upon receipt or on such later date as may be specified in the notice. In the event of cancellation, We shall return promptly the unearned portion of any premium paid. The earned premium shall be computed pro rata. Cancellation shall be without prejudice to any claim originating prior to the Effective Date of cancellation.

# EXHIBIT A

ACD-ID (1-17)

**SPECIMEN**

## IMPORTANT NOTICE TO ALL IDAHO POLICYHOLDERS

### IMPORTANT NOTICE

Your representative will be happy to help you with any question or problem relating to your Policy.
For your convenience, you can also call Banner Life Insurance Company with any question, toll-free at:

**1-800-638-8428**

If you prefer, you can write to us at the address shown below.
Please include your full name, address, and policy number with all correspondence.

Banner Life Insurance Company
3725 Bennett Creek Avenue
Frederick, Maryland 21704

If you feel that we have not fully explained the matter, you may call or write to the:

Idaho Department of Insurance:
Consumer Affairs
700 W State Street – 3rd Floor
P O Box 83720
Boise, ID 83720-0043
1-800-721-3272
www.DOI.Idaho.gov

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

ACD-ID (1-17)



EXHIBIT A

**EXHIBIT "E"**

# EXHIBIT A

Case 1:20-cv-00036-JZ Document 47 Filed 08/09/21 Page 61 of 61
Case 1:20-cv-00036-DCN Document 7 Filed 02/24/20 Page 58 of 58
To Robin Smith-Scott   Page 1 of 1          2019-07-26 21 57 49 (GMT)          18882003530 From Lineage Law LLC


**INTERPLEADER LAW**
— LIFE INSURANCE LAWYERS —

July 26  2019

**Via Facsimile Only**
(301) 279-4187

Banner Life Insurance Company
Legal & General America
Attn  Robin Smith-Scott
3275 Bennett Creek Avenue
Frederick, Maryland 21704

> *Re:*   *Insured: Jeremy C. Eggers, Deceased*
> *Claim No.: LC96626*
> *Policy No.: 181239991*

Dear Ms  Smith-Scott

    I am in receipt of your letter dated July 10, 2019, in response to my letter dated June 27, 2019, confirming the policy face amount and the competing claimant's identity  As we are awaiting contact with The Estate of Jeremy Eggers, to attempt to resolve this matter without litigation, I wanted to inquire into something that was recently brought to my attention  It is my understanding from my client, that Jeremy Eggers may have also had an AD&D rider on this policy  Can you confirm if there is any separate or additional AD&D benefit?  If so, what is that benefit amount?  Additionally, I want to verify that my client is contesting any and all benefits that may be due and payable as a result of the Insured's death, under the above reference policy

    If you have any questions about this correspondence, please do not hesitate to contact me  Thank you for your cooperation in this matter

    With warmest regards, I am,

Sincerely yours,

*Brittany Root*

Brittany Root
Attorney

**INTERPLEADER LAW, LLC**

9015 Bluebonnet Blvd
Baton Rouge, Louisiana 70810

Phone  225 246 8706
Fax  888 200 3530

brittany root@interpleaderlaw com
www interpleaderlaw com

# EXHIBIT A